GUILLERMO ATILES MORÉU, ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, recurrida; VALERIANO MATÍAS, JUAN MOJICA GOITÍA y JUAN GONZÁLEZ BARRETO, obreros lesionados.

Número 486.

*Sometido:* 12 de julio de 1954. *Resuelto:* 3 de agosto de 1954.

*Donald R. Dexter* y *Rafael A. Oliveras Vera,* abogados del recurrente.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Valeriano Matías, Juan Mojica Goitía y Juan González Barreto son obreros que recibieron lesiones compensables en sus respectivas manos derechas, cuyas lesiones dieron lugar, en cada caso, a una incapacidad parcial permanente. Ellos son zurdos, esto es, su mano hábil es la izquierda.

El art. 3 de la Ley núm. 45 de 1935 ((1) pág. 251), Ley de Compensaciones por Accidentes del Trabajo, según dicho artículo fué enmendado por la Ley núm. 284 de 1945 (pág. 1037) y por la Ley núm. 115 de 1953 (pág. 411), dispone, en parte, lo siguiente:

"Todo obrero o empleado que sufriere lesiones o enfermedades ocupacionales dentro de las condiciones de esta Ley tal y como se establece en el artículo 2, tendrá derecho:

".     .     .     .     .     .     .     .

".     .     .     .     .     .     .     .

"Incapacidad Parcial Permanente

"3. Se considerará incapacidad parcial permanente la pérdida de un pie o pierna, una mano, un brazo, un ojo, uno o más dedos, ya sea de los pies o de las manos y cualquiera anquilosis o fractura o dislocación donde haya habido rotura de ligamentos y donde la restauración no sea completa. Por las incapacidades parciales permanentes especificadas a continuación, el obrero o empleado lesionado recibirá una compensación adicional consistente en el 50 por ciento del jornal que percibía el día del accidente, o que hubiera de percibir a no ser por la ocurrencia del accidente, durante el número de semanas según se fija en la tabla que se inserta a continuación; Disponiéndose, que en ningún caso se pagará al obrero o empleado más de veinte (20) dólares ni menos de cinco (5) dólares por semana; Y, disponiéndose, además, que en ningún caso se pagará una suma mayor de tres mil (3,000) dólares.

"Tabla de Compensaciones

".   .   .   .   .   .   .

"Manos:
"Pérdida de la mano derecha por
la muñeca ........................ Durante 200 semanas
"Pérdida de la mano izquierda por
la muñeca ........................ Durante 180 semanas

*"En los casos de pérdida de la mano izquierda por la muñeca, se concederá la compensación correspondiente a la mano derecha cuando dicha mano izquierda fuere la mano hábil.* (Bastardillas nuestras.)

Este último párrafo fué introducido por la Ley núm. 284 de 1945, no habiendo estado incluído en la Ley núm. 45 de 1935.

El 22 de junio, el 28 de julio y el 28 de agosto de 1953 el Administrador del Fondo del Seguro del Estado concedió compensación a los tres obreros, por las lesiones sufridas en su mano derecha, a base de 180 semanas. Los obreros apelaron a la Comisión Industrial, y ésta modificó las decisiones del Administrador, concediendo compensación a base de 200 semanas. La tesis de la Comisión es al efecto de que, la

ley concede compensación por lesiones a la mano izquierda, cuando ésta es la mano hábil, a base de 200 semanas, y a base de 180 semanas cuando la izquierda no sea la mano hábil, pero que los casos apelados envuelven lesiones a la mano derecha y que, en esos casos, la ley establece taxativamente una compensación a base de 200 semanas en todos los casos, no disponiendo la ley que cuando la mano hábil sea la izquierda, y las lesiones se causen a la mano derecha, la compensación en esos casos sea a base de 180 semanas. Según la Comisión, se trata de un caso de ley escrita, no teniendo la Comisión facultad de suplir omisiones legislativas y de intercalar en el art. 3 de la ley una disposición al efecto de que, cuando la mano hábil sea la izquierda, y se causen lesiones a la mano derecha, la compensación sea a base de 180 semanas.

El Administrador ha recurrido ante este Tribunal y ha impugnado las resoluciones de la Comisión.

▆▆▆ Antes de la enmienda adoptada por la Ley núm. 284 de 1945, la compensación señalada se refería exclusivamente a la identidad en sí de la mano perdida en virtud de una lesión, y no guardaba relación alguna con la cuestión de si el obrero era derecho o zurdo. La pérdida de la mano derecha conllevaba una compensación basada en 50 por ciento del jornal recibido durante 200 semanas, y la pérdida de la mano izquierda implicaba una compensación basada en el 50 por ciento de los jornales recibidos durante 180 semanas. Pero la Ley del 1945 estableció una nueva categoría basada en la diferencia entre la mano hábil y la inhábil. La enmienda se limitó literalmente al caso de la pérdida de la mano izquierda por un obrero cuya mano hábil era precisamente la izquierda. No se cubrió expresamente el caso de la pérdida de la mano derecha por un obrero cuya mano hábil es la izquierda, tal como ocurre en los casos ante nos. Pero no obstante tal omisión, fué el propósito legislativo esencial el establecer diferencias de compensación basadas en las diferencias de funciones de las manos, en cuanto a

si el obrero es zurdo o derecho. La regla mecánica de la identidad de la mano perdida fué sustituída por la norma más realista y racional de la habilidad de la mano afectada. Es evidente que para un obrero zurdo la pérdida de la mano izquierda conlleva un mayor perjuicio que la pérdida de la mano derecha. Pero el estatuto se limitó expresamente a aumentar la compensación de los obreros zurdos que perdiesen su mano izquierda pero no redujo específicamente la compensación en el caso de la pérdida de la mano derecha por un obrero zurdo. De adoptarse una interpretación literal de la ley, como lo hizo la Comisión Industrial, la compensación sería igual en ambos casos, de un obrero zurdo que perdiese la mano derecha o la izquierda. De otro lado, aun de acuerdo con las disposiciones literales de la ley, el caso sería distinto en cuanto a un obrero cuya mano hábil sea la derecha, ya que, de él perder la mano derecha, él recibiría una compensación a base de 200 semanas y, de ese obrero derecho perder la mano izquierda, la compensación sería función de 180 semanas.

Estamos conscientes del hecho de que, generalmente, es la obligación del juzgador el hacer valer la letra de la ley. Pero no debe adoptarse una interpretación literal de un estatuto, o de un artículo aislado del estatuto, si ella es contraria a la intención general auténtica y al verdadero propósito del legislador, según esa intención y ese propósito surjan de los propios términos de la ley o de la sección correspondiente. Debemos tratar de evitar una interpretación literal de una ley que conduzca a resultados irrazonables o absurdos o que dé lugar a discrímenes o distinciones que carezcan de una base racional. Naturalmente, si el legislador ha deseado tales resultados y no hay margen en el texto de la ley para imputar al legislador otra intención distinta que sea más racional y justa, los tribunales no deben imponer su propio criterio, de justicia y de razonabilidad, y deberían entonces respetar la voluntad legislativa. Pero en el caso de autos, hay un margen legítimo para llegar a la conclusión de que

el legislador, fundamentalmente, quiso establecer un nuevo sistema basado en la diferencia en funciones entre la mano hábil y la inhábil, reconociéndole a esta última una compensación menor. No podemos concluir que el legislador tuvo la intención de establecer una distinción entre obreros derechos y los zurdos, esto es, que tuvo el propósito de disponer que en el caso de un obrero derecho, la pérdida de la mano inhábil, o sea, la izquierda, conllevase una compensación menor, pero que en el caso de un obrero zurdo la pérdida de la mano inhábil, o sea, la derecha, conllevase la misma compensación que si se perdiese la mano hábil. Aunque en la ley no se hace mención expresa del caso de un obrero zurdo que pierda la mano derecha, tal omisión, basada sencillamente en una inadvertencia, debe ser suplida para hacer cumplir el propósito esencial del legislador de establecer diferencias en las compensaciones a base de la diferencia, reconocida por la propia ley, entre la utilidad al obrero de la mano hábil y la inhábil. Tal interpretación es congruente con la deseabilidad de evitar distinciones irrazonables e injustas. No estamos legislando, sino subsanando una inadvertencia del legislador, para que adquiera efectividad racional el verdadero propósito legislativo de establecer una nueva forma de compensación basada en la diferencia entre la mano hábil y la inhábil.

En vista de lo expuesto, la compensación por la pérdida de la mano derecha por un obrero zurdo debe fijarse a base del 50 por ciento de los jornales recibidos en 180 semanas, y no en 200 semanas. Por lo tanto, *deben revocarse las resoluciones de la Comisión Industrial que han sido impugnadas en este recurso de revisión.*

El Juez Asociado Sr. Negrón Fernández disintió.

El Juez Asociado Sr. Sifre concurre con el resultado.