SARGENTO ISABELO ROMÁN, ETC., demandante y recurrido, *v.* SALVADOR T. ROIG, SUPERINTENDENTE DE LA POLICÍA, demandado y recurrente.

*Número:* R-65-15          *Resuelto:* 29 de junio de 1966

*J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados del recurrente; *Elfren Bernier,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Por carta circular Núm. 9 de 26 de julio de 1963 el Superintendente de la Policía estableció un registro de elegibles para ascenso a la categoría de Teniente Segundo, como resultado de exámenes ofrecido a tal efecto. La lista de elegibles se componía de 111 candidatos a ascenso. El demandante

Sargento Isabelo Román Díaz ocupaba el sitio Núm. 102 en estricto orden de la puntuación obtenida en los exámenes, de dicha lista de 111 candidatos. A todos los candidatos a ascenso que tenían la condición de veteranos la Dirección de la Policía les acreditó 5 puntos sobre la puntuación obtenida en los exámenes, de acuerdo con lo dispuesto en la Sec. 2 de la Ley Núm. 469 de 15 de mayo de 1947—Carta de Derechos del Veterano Puertorriqueño.

La Carta de Derechos del Veterano Puertorriqueño, Ley Núm. 469 de 15 de mayo de 1947, en su Sec. 2 dispone lo siguiente: "A los efectos de  calificar para cualquier cargo o empleo en el Servicio Estadual, la Autoridad correspondiente acreditará a todo veterano aspirante a dicho cargo o empleo en los exámenes que al efecto se ofrezcan y en los que éste participe, un cinco (5) por ciento del cómputo general de puntuación."

Con el pretexto de buscar la intención legislativa, la expresión de la cual en este caso es por excelencia la letra clara y libre de toda ambigüedad de la Sec. 2 antes transcrita,— Art. 14, Código Civil; *Rodríguez Rodríguez* v. *Gobernador*, 91 D.P.R. 101 (1964); *López* v. *Muñoz, Gobernador*, 81 D.P.R. 337 (1959) y autoridades ahí citadas:—la Sala sentenciadora determinó que la Sec. 2 concede el beneficio del cinco (5) por ciento sólo en la primera ocasión en que los exámenes son tomados para entrar inicialmente en el Servicio. No podemos estar conformes con el criterio de la Sala sentenciadora, que más que una interpretación de la ley constituye una distinta redacción judicial de la misma intercalándole limitaciones y cualificaciones restrictivas de su alcance que el Legislador no tuvo a bien imponer.(1)

(1) ". . . Además olvida que, cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. Art. 14 Cód. Civil, ed. 1930, 31 L.P.R.A. 14; 2 Sutherland, *Statutory Construction*, 3ra. ed., sec. 4701 et seq.; Endlich, *On the Interpretation Statute,* cap.° I, sec. 1 et seq.; Sutherland, *Statutes · and Statutory Construction,* cap.° XIII, sec. 234

La Exposición de Motivos de la Carta de Derechos del Veterano expresa que "Se fijan aquí ciertas facilidades, derechos, beneficios y preferencias en favor de los veteranos

et seq.; Black, *Construction and Interpretation of the Laws*, cap.° 3, pág. 51.(5) En *Atiles, Admor.* v. *Comisión Industrial*, 77 D.P.R. 16, 20 (1954), expresamos que es la obligación del juzgador el hacer valer la letra de la ley, si bien no debe adoptarse una interpretación literal cuando ella resulta contraria a la intención general auténtica y al verdadero propósito del legislador y conduciría obviamente a resultados absurdos e irrazonables; y aun así, dijimos que si el legislador ha deseado tales resultados y no hay margen en el texto de la ley para imputarle otra intención que sea más racional y justa, los tribunales no deben imponer su propio criterio de justicia y razonabilidad, y deberán entonces respetar la voluntad legislativa. Y en *Clínica Juliá* v. *Secretario de Hacienda*, 76 D.P.R. 509, 521 (1954):

> 'Pero esos son casos que envuelven contradicciones internas en el propio estatuto, correspondiendo entonces a los tribunales el resolver tal contradicción a base del establecimiento de la intención auténtica del legislador. Ese propósito no debe ser el del juez, sino el del legislador, según surja del estatuto en sí. El juez es un intérprete, y no creador. Su facultad de interpretación adquiere relevancia cuando del estatuto surgen varios significados probables que suministren un margen adecuado para selección judicial, pero si el lenguaje es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa. Frankfurter, "Some Reflections on the Reading of Statutes", 47 Col. L. Rev. 527; 1 Mertens 59. Ese es un postulado del honor judicial'.

Véanse: *De la Haba* v. *Tribunal de Contribuciones*, 76 D.P.R. 923, 947 (1954); Cuando el lenguaje de un estatuto [contributivo] es claro, éste debe ser aplicado como la Asamblea Legislativa lo redactó y no como este Tribunal o el Secretario [de Hacienda] pudieron querer que éste leyera; *Comunidad Fajardo* v. *Tribunal de Contribuciones*, 73 D.P.R. 543, 551 (1952). En este caso dijimos al revocar al Tribunal Superior que negó el derecho a deducir ciertos intereses a los efectos de la contribución sobre ingresos, que las cortes no tienen autoridad para injertar en el lenguaje inequívoco de un estatuto lo que la Legislatura, ya fuere deliberadamente o no, eligió omitir, aun reconociendo que la aplicación de la ley según fue hecha por el tribunal inferior respondía a una política general legislativa contra la deducción de tales intereses en determinados casos especificados.

"No hay razón para que intercalemos en el estatuto, lo que constituiría una invasión de la función legislativa, la circunstancia adicional de que la incapacidad debe surgir como resultado de un daño directamente infligido por la persona que se apresa o se trata de apresar atacando al policía, o por algún otro medio de violencia externo. Como expusimos en *Caguas Bus Line, Inc.* v. *Sierra, Comisionado*, 73 D.P.R. 743, 750 (1952),

de Puerto Rico, todos ellos absolutamente necesarios para acelerar el proceso de su incorporación a la vida civil, mejorar su preparación académica y su adiestramiento técnico-vocacional y proveerles medios para asegurar su bienestar económico y social". Nadie mejor dotado de capacidad que el propio Legislador para determinar qué derechos, qué beneficios y qué preferencias en favor de los veteranos debía conceder, y en qué amplitud o extensión concederlos, para lograr adecuadamente los fines y propósitos que perseguía con esta legislación. Así, con miras a lograr esos fines, entre otros derechos, beneficios y preferencias, dispuso el Legislador en la Sec. 2 que a los efectos de *calificar* para *cualquier cargo o empleo* . . . la Autoridad acreditará *a todo* veterano *aspirante a dicho cargo o empleo* en los exámenes que *al efecto* se ofrezcan y participe, un cinco por ciento . . . .

■ Ante lenguaje tan claro, explícito y libre de toda ambigüedad o duda, no cabe menospreciar la letra de la ley, según reza la tradicional norma de hermenéutica que nos impone el Art. 14 del Código Civil, bajo el pretexto de cumplir su espíritu. Aquí espíritu o intención y letra son la misma cosa. El Legislador escribió así la Sec. 2 para darle cuerpo y sustancia a la intención que tenía. La Sala sentenciadora al leer en la Sec. 2 las restricciones que ha leído sin estar ahí dichas, parte del supuesto de que con la toma o aprobación de un primer examen para el Servicio ahí se cumple o ahí termina en este aspecto *el proceso de integración* de un veterano a la vida civil. Además de que el supuesto puede resultar de

la Legislatura en este caso tenía pleno conocimiento del problema, máxime cuando en la misma Sesión aprobó ambos estatutos de pensiones, previó el impacto económico de esta pensión especial proveyendo para su pago con cargo al Tesoro Público sin sujeción a la solvencia de un fondo particular, y no hay porqué imponer restricciones que no están en la ley, con mayor razón, cuando es norma generalmente aplicada que las leyes de pensiones deben interpretarse liberalmente a favor del beneficiario dado el propósito reparador con que se aprueban. [citas]"

Así se expresó el Tribunal en *López* v. *Muñoz, Gobernador,* antes citado.

dudosa corrección intrínseca ante la experiencia y los complejos factores que pueden entrar en juego o que deben ser evaluados en todo un proceso de integración de un veterano a la vida civil, al Legislador ya pasó el juicio apropiado sobre el particular y creyó necesario el mandato de la Sec. 2 sin cualificaciones o limitaciones en su alcance que no dispuso.

■ No correspondía a la Sala sentenciadora modificar el juicio del Legislador con su propio juicio sobre cuándo ocurre la debida integración o cuándo ha terminado el proceso de ajuste para en esa forma achicar el alcance de la Sec. 2 de la Ley adicionándole limitaciones que en su texto no aparecen. No hay margen aquí para interpretación de lo que sería un estatuto dudoso. La expresión del mandato que contiene la Sec. 2 es clara y definitiva.

El que se conceda a veteranos beneficios en la puntuación de exámenes adicionales para *ascenso* no es un hecho inusitado. Muchos Estados los han concedido y su validez se ha sostenido aun ante planteamientos constitucionales. Como se dijo en *McNamara* v. *Director of Civil Service*, 110 N.E.2d 840 (Mass.) 1953, la diferencia entre concederles a veteranos el beneficio en los exámenes originalmente tomados para entrar a un cargo y el concederlo en aquellos exámenes para *ascenso* es una diferencia de grado y no fundamentalmente de principio. En *State* v. *Civil Service Com'n of City of Bridgeport*, 90 A.2d 862 (Conn.) 1952, se dice que la determinación de si la política pública demanda que se le dé trato preferente a los veteranos en exámenes de *ascenso* en el Departamento de Policía era una para ser contestada únicamente por la Asamblea Legislativa, no siendo de la potestad del Poder Judicial el considerar la sapiencia o no de esa medida. La Corte Suprema de Connecticut no encontró ninguna distinción vital entre el poder de la Legislatura para conceder preferencias originalmente para entrar en el empleo y su poder para concederlas en ascenso. Cf. *Herman* v. *Sturgeon*, 293 N.W. 488, (Iowa) 1940, donde el Tribunal dice que no

ve méritos en la contención de que la preferencia a un veterano no se aplique a exámenes de ascenso y comenta que determinada sección, al proveer las preferencias, expresamente incluía la frase "todos los exámenes".

■ Asumiendo que estuviéramos ante un estatuto de dudoso texto que demandara interpretación, hay un punto adicional. Ha sido norma de derecho generalmente aceptada que la aplicación e interpretación administrativa de un estatuto por aquellos organismos particularmente encargados de ponerlo en vigor y velar porque sus fines se cumplan de ordinario debe merecerle un gran peso a los tribunales. En la aplicación de la Sec. 2 de la Carta de Derechos del Veterano la Oficina de Personal, cuya autoridad sobre la materia no admite dudas, ha acreditado el 5 por ciento todas las veces que un veterano cubierto por la Ley ha tomado y aprobado un examen. Específicamente así lo hizo con los registros de elegibles de la Policía. Cuando dicha función de establecer registros de elegibles pasó a la dirección del propio Cuerpo, administrativamente se siguió igual norma. (²)

Es significativo el hecho que con posterioridad al 1947 y durante tantos años que ha estado en vigor la Sec. 2 el Legislador ha legislado en relación a la Ley Núm. 469 y en momento alguno ha alterado o repudiado la interpretación administrativa de dicha disposición o la aplicación de la misma hecha por los organismos administrativos. Debe presumirse que ha sancionado dicha interpretación.

■ Intercalarle a la Sec. 2 por *fiat* judicial las restricciones que en ella ha leído la Sala sentenciadora me parece ser un tradicional caso de legislación judicial no autorizada ni deseable. Debe ser la Legislatura quien determine si un vete-

---

(²) En el *Manual de Procedimientos de la División de Reclutamiento* de la Oficina de Personal, distribuido por dicha Oficina a los funcionarios a cargo del personal de las agencias gubernamentales, se dispone que en las calificaciones de *todos* los exámenes y el establecimiento de registros se acrediten las preferencias de veteranos, sin hacerse distinción en cuanto a si el veterano ya ha recibido preferencia en algún otro examen.

rano ha logrado o no reintegrarse a la vida civil por haber tomado un examen de ingreso al Servicio, y si ya no necesita de la protección amplia de la Sec. 2 según la otorgó el Legislador, que como dice la Exposición de Motivos, la consideró absolutamente necesaria para lograr su fin.

*Por las consideraciones expuestas se revocará la sentencia recurrida y se declarará sin lugar la demanda.*

El Juez Asociado Señor Dávila disintió en opinión en la cual concurren los Jueces Asociados Señores Rigau y Ramírez Bages.

—O—

Opinión disidente del Juez Asociado Señor Dávila en la cual concurren los Jueces Asociados Señores Rigau y Ramírez Bages

San Juan, Puerto Rico, a 29 de junio de 1966

El demandante y otros miembros de la Policía en situación similar tomaron un examen de ascenso al rango de Teniente II que ofreció el Superintendente de la Policía. Los que aprobaron el examen fueron incluidos en una "Lista de Elegibles". En su preparación se siguió el orden de puntuación obtenida. A algunas de las personas incluidas en la lista les fue acreditado un cinco por ciento del cómputo general de puntuación por su condición de veteranos aplicando para ello la sección segunda de la Ley Núm. 469 de 15 de mayo de 1947 (29 L.P.R.A. sec. 762). Esto trajo como secuela el que a personas como el demandante que *no eran veteranos* [1]

---

[1] La ley define como veterano "toda persona natural o residente de Puerto Rico, que haya formado parte de las Fuerzas Armadas de Estados Unidos de América durante la Primera Guerra Mundial, durante la Segunda Guerra Mundial o durante la Guerra de Corea, hombre o mujer, que haya servido activamente por un término no menor de tres meses y que haya sido licenciado honrosamente a la terminación de dicho servicio. Si dicha persona falleció en el cumplimiento de sus deberes como miembro de dichas Fuerzas Armadas durante los períodos de las guerras antes

les fuera afectada su oportunidad de lograr un ascenso debido a que algunas de las personas que recibieron esta puntuación adicional resultaron por ello colocadas en posición superior en el orden de la lista.

El demandante impugnó ante los tribunales la legalidad de la actuación del Superintendente de la Policía al concederle esta puntuación adicional a aquellas personas que la habían recibido ya en ocasiones anteriores. Solicitó del Tribunal que ordenara "al demandado la revisión del Registro de Elegibles para ascensos a la categoría de Teniente II al efecto de eliminar los cinco puntos (*sic*) que han sido concedidos a algunas personas en contra de la ley o discriminando contra el demandante y las personas colocadas en una situación similar."

El tribunal dictaminó a su favor. Determinó que la puntuación adicional que a favor de los veteranos establece la ley solamente puede ser concedida una sola vez, en su primer examen de ingreso o ascenso. Ordenó al Superintendente de la Policía que revisara la lista de elegibles eliminando la puntuación adicional concedida a aquellos veteranos que habían recibido este beneficio en más de una ocasión.

La controversia gira alrededor de la interpretación que deba dársele a la segunda sección de la Ley Núm. 469 de 15 de mayo de 1947, conocida como Carta de Derechos del Veterano Puertorriqueño. Dispone lo siguiente:

"A los efectos de calificar para cualquier cargo o empleo en el Servicio Estadual, la Autoridad correspondiente acreditará a todo veterano aspirante a dicho cargo o empleo en los exámenes que al efecto se ofrezcan y en los que éste participe, un cinco (5) por ciento del cómputo general de puntuación."

Este es uno de varios beneficios y preferencias que el legislador estimó razonable otorgar a los veteranos puertorriqueños con ánimo de compensar en alguna medida a aqué-

---

indicadas, se considerarán como veteranos, a todos los efectos, el cónyuge supérstite, mientras no vuelva a casarse; y en su defecto, los hijos, mientras sean menores de edad." (29 L.P.R.A. sec. 774, Suplemento 1964.)

llos a quienes las exigencias de la guerra los separaron de la comunidad donde tenían organizada su vida. Facilitar el reingreso del veterano a su antigua comunidad, a un nuevo empleo. Hacer más viable su retorno a la vida civil. A ese efecto se expresó en la Exposición de Motivos de la Ley Núm. 469 de 1947 que "[e]n reconocimiento de los valiosos servicios prestados al país y a la causa de la democracia en el mundo por los veteranos puertorriqueños durante la primera y segunda Guerra Mundial, se establece la presente Carta de Derechos del Veterano Puertorriqueño. Se fijan aquí ciertas facilidades, derechos, beneficios y preferencias en favor de los veteranos de Puerto Rico, todos ellos absolutamente necesarios para acelerar el proceso de su incorporación a la vida civil, mejorar su preparación académica y su adiestramiento técnico-vocacional y proveerles medios para asegurar su bienestar económico y social."

Para mejorar su preparación académica y su adiestramiento técnico-vocacional la ley ordenó la ampliación del sistema de escuelas vocacionales (Sec. 9), el programa de educación de adultos (Sec. 10) y concedió el derecho a matrícula gratuita en la Universidad y preferencia en cuanto a las ayudas, becas y otros beneficios que se concedieren a los estudiantes de la Universidad (Sec. 11).

Para asegurar su bienestar económico y social le concedió ciertos privilegios en la aplicación de la Ley de Contribuciones sobre Ingresos y en la Ley de Contribuciones sobre la Propiedad. En cuanto a la primera se concedió una deducción especial de quinientos dólares, en adición a las otras deducciones provistas por ley, durante diez años (29 L.P.R.A. sec. 766). En cuanto a la segunda se concedió una exención de diez mil dólares sobre el valor de tasación de la propiedad también por un período de diez años.

Al fallar el tribunal de instancia se expresó:

" . . . En este caso la ley debe interpretarse de manera que, como dice su exposición de motivos, los veteranos tengan derecho

a una preferencia para acelerar el proceso de su incorporación a la vida civil, pero no para establecer un discrimen permanente en favor de un grupo de ciudadanos sobre cualesquiera otros. La inequidad de esa interpretación se hace más patente si se considera que se concede un privilegio a un veterano sobre una persona que no tuvo la oportunidad de servir a su país como él, por razón de no haber tenido la edad suficiente en el momento en que ocurrieron las conflagaciones (*sic*) que motivaron la partida del veterano hacia los frentes de la guerra. La interpretación sensata de la ley es al efecto de que el veterano debe tener derecho a cinco puntos([2]) (*sic*) en un examen de ingreso o ascenso con el propósito de ayudarle a su reincorporación a la vida civil, en la primera oportunidad en que asiste a una competencia por un empleo."

Parece razonable esta interpretación. Está en armonía con la intención del legislador de hacer de estas medidas unas de carácter temporero según esta intención surge de otras disposiciones de la ley. Los privilegios referentes a la contribución sobre la propiedad y la contribución sobre ingresos se limitaron a diez años. Los beneficios para mejorar su preparación académica y adiestramiento técnico-vocacional son de por sí temporeros. Es lógico que el beneficio de puntuación adicional en los exámenes está limitado al primer examen en que participe para ayudarle en su reincorporación a la vida civil. Por entenderlo así, no puedo concurrir con la opinión del Tribunal.

---

([2]) La ley lo que concede es "un cinco (5) por ciento del cómputo general de puntuación."