La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Comparece ante nos, The Taco Maker, Inc. (la peticiona-ria), y nos solicita la revisión de una Sentencia del Tribunal de Apelaciones. Mediante dicho dictamen, el foro ape-lativo intermedio confirmó una Sentencia del Tribunal de Primera Instancia que declaró “con lugar” una querella por despido injustificado impuesta contra la peticionaria.
Hoy nos corresponde interpretar, inter alia, el lenguaje del inciso (b) del Art. 11 de la Ley Núm. 80 de 30 de mayo *284 de 1976, según enmendada,(1) referente a los honorarios de abogado.
Expongamos los hechos que dieron génesis a la contro-versia de autos.
I
El 17 de septiembre de 2008, la señora Carmen Lydia Hernández Maldonado (en adelante la recurrida), instó una querella contra la peticionaria, al amparo de la Ley Núm. 80, supra,(2) y del procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada.(3) Al momento de su despido, la recurrida ha-bía trabajado con la compañía, mediante un contrato sin tiempo determinado, como Gerente de Tienda desde el 27 de mayo de 1997 hasta el 17 de enero de 2008.(4) En la querella interpuesta, la recurrida alegó que la habían des-pedido injustificadamente de su empleo, en contravención con lo dispuesto en la Ley Núm. 80, supra.
En la querella instada, la recurrida planteó que le ofre-cieron como razón para su despido la falta de confianza porque presuntamente no realizó un depósito a tiempo. En el escrito, la recurrida argüyó que a ella no le correspondía realizar dicho depósito, ya que el día imputado estaba au-sente del trabajo. A su vez, argumentó que no se justificaba su despido como la primera alternativa ante la situación alegada. En consecuencia, peticionó la correspondiente me-sada, así como el veinticinco por ciento (25%) en concepto de honorarios de abogado.
El 25 de septiembre de 2008, la peticionaria presentó una alegación responsiva en la que negó la mayoría de las alegaciones. Alegó como defensa afirmativa la falta de ho-
*285 nestidad de la recurrida.(5) En cuanto a la partida en con-cepto de honorarios de abogado solicitada, la peticionaria expresó que los mismos “en estos casos son del 15% de la cantidad que el empleado reclame”. Apéndice de la Petición de certiorari, pág. 51.
Trabada la controversia entre las partes, se celebró la vista en su fondo. Como parte de la prueba testifical de la peticionaria declararon los Srs. José Manuel Rivera Soto, gerente de distrito y supervisor de la recurrida, y Oscar Soto Colón, presidente de la compañía.
Completados los trámites procesales, el Tribunal de Pri-mera Instancia declaró “con lugar” la querella presen-tada. Determinó que la peticionaria no había probado que el despido fue justificado. Entre otros, dicho foro resaltó las contradicciones en los testimonios sobre si ocurrieron los alegados hechos que originaron el despido, la falta de ma-nuales para el empleado, la ausencia de evaluaciones ne-gativas de la recurrida y el hecho de que ante hechos simi-lares, otros empleados fueran suspendidos y no despedidos. Expuso el foro a quo que el testimonio del Sr. José Manuel Rivera Soto no le mereció credibilidad. Dicho testigo declaró que la recurrida tomó aproximadamente dos mil dólares ($2,000) del depósito de la tienda para uso personal.
Entre sus conclusiones, el Tribunal de Primera Instan-cia apuntó que la recurrida tuvo una relación amorosa con un empleado de la compañía a quien el Presidente de la peticionaria quería como a un hijo. Dicha relación culminó por decisión de la recurrida, previo al despido. En especí-fico, expuso el Tribunal de Primera Instancia:
Es claro que en el presente caso se estableció por la quere- *286 liante mediante preponderancia de prueba que la misma fue despedida injustificadamente y que es merecedora de la co-rrespondiente mesada y los honorarios de abogado. El patrono no probó sus alegaciones relacionadas con los depósitos, y mu-cho menos que no seguir dichos procedimientos conllevara el despido.
Abona a lo anterior las contradicciones en los testimonios sobre la ocurrencia de los alegados hechos que conllevaron al despido de la querellante; la falta de manuales que expliquen o indiquen al empleado la sanción por la violación realizada; el hecho de que otros empleados por “hechos similares” recibie-ran una suspensión y no el despido; y la falta de evaluaciones negativas (tenemos un récord de 10 años de trabajo eficiente y entonces dos amonestaciones en menos de quince días).
La querellante compartía la responsabilidad de los depósi-tos en cuestión, en ambos casos, con otras personas. En la primera ocasión el responsable directo era una subalterna suya, que no testificó. El Tribunal puede entender que la que-rellante era en última instancia responsable de su subalterna, pero si el problema era de supuesta deshonestidad, el testimo-nio de aquélla hubiera sido importante y no se trajo al Tribunal. En la segunda ocasión la querellante estaba ausente y el responsable era su supervisor inmediato, que ha resultado ser protagonista de los hechos en este caso, y cuyo testimonio no logró establecer, a juicio del Tribunal, la teoría de la parte querellada. Este es el mismo señor que, si le hubiésemos creído, hubiera sido encubridor de la querellante en el su-puesto uso ilegal de los fondos de la querellada, porque le ha-bría ayudado a ocultarlo. Apéndice de la Petición de certiorari, págs. 34-35.
En consecuencia, el Tribunal de Primera Instancia con-denó a la peticionaria a pagarle a la recurrida diecisiete mil ochocientos noventa y tres dólares con setenta y siete centavos ($17,893.77) en concepto de la mesada, más el veinticinco por ciento (25%) de dicha cantidad en concepto de honorarios de abogado.
Insatisfecha, la peticionaria acudió al Tribunal de Ape-laciones, el cual, mediante Sentencia de 27 de octubre de 2009, y notificada el 29 de octubre de 2009, confirmó el dictamen recurrido. La peticionaria instó una recon-sideración. Esta fue denegada.
*287 Inconforme, la compañía peticionaria acude ante nos mediante el recurso de certiorari y señala los errores si-guientes:
Erró el Honorable Tribunal sentenciador al resolver un caso ante su consideración utilizando la doctrina de que no inter-vendrá con las determinaciones del tribunal sentenciador en ausencia de error manifiesto, perjuicio indebido o parcialidad teniendo ante su consideración prueba documental que sos-tiene lo contrario.
Erró el Honorable Tribunal sentenciador al concluir que el he-cho de que un empleado utilice fondos del patrono para fines propios, no es causa suficiente para el despido en la primera ofensa.
Erró el Honorable Tribunal sentenciador al adjudicar un 25% de honorarios de abogado cuando la Ley [Núm.] 80 de Despido Injustificado establece un 15% o $100[,] lo que sea mayor[,] de la cuantía adjudicada. Petición de certiorari, pág. 3.
Examinado el recurso, acordamos expedir. Contando con el beneficio de la comparecencia de las partes, procede-mos a resolver.
II
En su primer señalamiento de error, la peticionaria nos alega que incidió el Tribunal de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia y darle deferencia a la apreciación de la prueba testifical que con-sistió en el solo testimonio de la querellante y los testigos del patrono. Esto, a pesar de existir prueba documental admisible que, a su entender, sostiene las razones para el despido: un recibo de pago, la carta de despido y la contes-tación a la querella. Estos últimos dos (2) documentos ha-cen referencia a unas supuestas declaraciones que hizo la recurrida y que la peticionaria alega que sus testigos las sostienen, pero que no fueron rebatidas. Añade que el foro intermedio emitió la Sentencia recurrida sin el beneficio de una transcripción o una exposición narrativa o estipulada de la prueba.
*288 A pesar de que la peticionaria indica que no pretende presentar la falta de consideración de la transcripción como error —por reconocer que debió notificar su intención de presentar la trascripción— el error señalado y discutido implica la impugnación de la apreciación de la prueba tes-tifical que se ofreció en instancia.(6)
La Regla 76 del Reglamento del Tribunal de Apelaciones trata sobre los requisitos para presentar una transcripción. Tal disposición establece:
... Una parte en una apelación o en un recurso de certiorari ante el Tribunal de Apelaciones notificará al Tribunal de Ape-laciones no más tarde de diez (10) días desde que se presentó el escrito de apelación o se notificó la expedición del auto soli-citado que se propone transcribir la prueba oral. En esa mo-ción, la parte proponente expresará las razones por las cuales considera que la transcripción es indispensable, y que propicia mayor celeridad en los procesos que la presentación de una exposición estipulada o una exposición narrativa. Regla 76(A) del Tribunal de Apelaciones, 4 L.RR.A. Ap. XXII-B.
Más adelante, en su inciso (B) el precepto dispone:
... Autorizada la transcripción, su proponente podrá solici-tar al Tribunal de Primera Instancia la regrabación de los procedimientos. La moción a esos efectos será presentada den-tro de los diez (10) días siguientes a la notificación de la orden del Tribunal de Apelaciones. Regla 76(B) del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B.
A su vez, surgen de las disposiciones reglamentarias pertinentes los términos para la presentación de exposicio-nes narrativas. Véase Regla 76.1 del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B. En cuanto a la Exposición Narrativa Estipulada de la Prueba en un recurso de *289 apelación, la Regla 76.1(A)(1) dispone que, dentro de los diez (10) días de haberse notificado el escrito de apelación, la parte apelante deberá notificar a la apelada que se pro-pone presentarla. 4 L.RR.A. Ap. XXII-B. Asimismo, en el inciso (2) del precepto se dispone que dentro de los treinta (30) días siguientes a la presentación de la apelación, la parte apelante preparará y someterá al Tribunal de Apela-ciones un Proyecto de Exposición Narrativa de la Prueba Oral pertinente al recurso. Regla 76.1(A)(2), 4 L.P.R.A. AP. XXII-B.
Una evaluación del expediente del caso de autos revela de manera diáfana que la peticionaria incumplió con las disposiciones reglamentarias; incumplimiento que esta misma reconoce.
Ante la ausencia de indicio de que el foro primario incurriera en error manifiesto, prejuicio, parcialidad o pasión al aquilatar la evidencia desfilada, no intervendremos con su apreciación de la prueba. Miranda Cruz y otros v. S.L.G. Ritch, 176 D.P.R. 951 (2009); Soc. de Gananciales v. Centro Gráfico, 144 D.P.R. 952 (1998). Esto, pues es quien está en mejor posición de aquilatar la prueba testifical. En consecuencia, ante la ausencia de la prueba oral, el Tribunal de Apelaciones no contaba con los elementos para descartar la apreciación razonada y fundamentada de la prueba que realizó el Tribunal de Primera Instancia. (7) Ante la ausencia de lo anterior, este Foro tampoco está en posición de descartar la apreciación de la prueba que realizó el foro de instancia, por lo que no intervendremos con la misma. Álvarez v. Rivera, 165 D.P.R. 1, 13 (2005).
*290 Hemos señalado, y hoy reiteramos, que las disposiciones reglamentarias sobre los recursos que se presentarán ante el Tribunal de Apelaciones se deben observar rigurosamente. Los abogados están obligados a cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos, y no puede quedar al arbitrio de los abogados decidir qué disposiciones reglamentarias se deben acatar y cuándo. Arriaga v. F.S.E., 145 D.P.R. 122 (1998). Por lo tanto, nos limitamos al análisis de la controversia ex-puesta en el tercer señalamiento de error.
III
En su tercer error, la peticionaria nos plantea que el Tribunal de Primera Instancia concedió para honorarios de abogado un veinticinco por ciento (25%) a computarse so-bre el total de la compensación del empleado. Es su conten-ción que la actuación del foro primario contraviene el len-guaje del inciso (b) del Art. 11 de la Ley Núm. 80, supra, el cual entiende que no establece un límite, sino un paráme-tro en la concesión de honorarios de abogado. Descansando en su ratio decidendi, es su contención que el Tribunal de Primera Instancia no tenía discreción para establecer un por ciento mayor en cuanto a los honorarios de abogado. Por eso, interpreta la precitada disposición de la siguiente manera: “la cuant[í]a hay que tomarla con un m[í]nimo de cien d[ó]lares o [el] 15%[,] lo que sea mayor”. Véanse: Pe-tición de certiorari, pág. 6; Alegato de la parte peticionaria, pág. 12.
No obstante, previo a discutir este punto, debemos cla-rificar que el inciso en cuestión fue enmendado mediante la Ley Núm. 128 de 7 de octubre de 2005. Así, durante el trámite de esta ley, se dejó fuera la frase “menor del quince (15) por ciento del total de la compensación”, siendo el len-guaje final “menor del por ciento del total de la *291 compensación”. Por lo tanto, la ley no prescribe expresa-mente porciento alguno.
Como resultado de esa omisión, consideramos perti-nente examinar el trámite legislativo de la Ley Núm. 128, supra, y repasar los principios de hermenéutica.
Así, pues, para la aprobación de toda ley se debe cumplir con el trámite que requiere la Constitución de Puerto Rico y suplementan los Reglamentos de la Cámara de Representantes y del Senado.(8) Art. Ill, Secs. 17-19, Const. E.L.A., L.P.R.A., Tomo 1. Véase, además, R. Elfrén Bernier y otros, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, págs. 44 y 46.
En extrema síntesis, el trámite legislativo comienza con la presentación de un proyecto en la Secretaría de la Cá-mara a la cual pertenece y de donde se refiere a la Comi-sión correspondiente para su estudio. Entonces, se efectúa su Primera Lectura e impresión. Oficina de Servicios Le-gislativos, La Asamblea Legislativa y el Proceso Legisla-tivo, 1997, págs. 41 y 42. Luego de evaluar y analizar la medida, la Comisión asignada rinde un Informe con su co-rrespondiente recomendación, salvo que la Cámara la des-cargue de esta función constitucional. Id., pág. 43.
En caso de que la referida Comisión someta un informe positivo en el que apruebe la medida con enmiendas, nue-vamente se imprime la medida y se refiere a la Comisión de Calendario y Reglas Especiales de Debate para incluirla en el calendario. Ya ante el Hemiciclo se lleva a cabo la Segunda Lectura, entiéndase, la lectura de la medida y el informe, así como su discusión. Entonces se procede a la votación. Oficina de Servicios Legislativos, supra.
*292 Cuando la Cámara de origen aprueba la medida, esta se imprime en letra uniforme y en su encabezamiento dirá “Texto de Aprobación Final por Cámara o Senado” (según aplique), así como la fecha de aprobación. Entonces, el Se-cretario del Cuerpo remitirá al otro cuerpo copias de la medida, según fuera aprobada. Oficina de Servicios Legis-lativos, supra, pág. 43. Idéntico trámite se sigue en el Segundo Cuerpo.
No obstante, cuando el Segundo Cuerpo aprueba la me-dida con enmiendas, tal como sucedió en el caso ante nos, la misma regresa al Cuerpo de origen para que éste precise si concurre o no con las enmiendas. De concurrir con dichas enmiendas, la medida se imprime en formato de enrolado, la firman los Presidentes de la Cámara de Representantes y del Senado y, entonces, se envía al Gobernador para su consideración. Acevedo Vilá v. Aponte Hernández, 168 D.P.R. 443 (2006).
Ahora bien, ya vigente una ley, esta tiene que ser interpretada para poder aplicarla. Pueblo v. Tribunal Superior, 98 D.P.R. 750 (1970). Para ello, como parte de nuestra obligación, los tribunales debemos considerar el propósito por el cual se promulgó e interpretarla para que este se haga viable. A esos efectos, “[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. Esto, considerando que “[l]as palabras de una ley deben ser generalmente entendidas en su más corriente y usual sig-nificación, sin atender demasiado al rigor de las reglas gra-maticales, sino al uso general y popular de las voces”. Art. 15 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 15. De esto ser así, no hay que buscar la intención legislativa fuera del texto de la ley. Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923 (2010).
Un examen del historial legislativo del P. de la C. 631 de 19 de enero de 2005, Ira Sesión Ordinaria, 15ta Asamblea *293 Legislativa, que dio génesis al estatuto mencionado, revela que al presentar dicho proyecto se sugirió como enmienda aumentar la cantidad para honorarios de abogado del quince por ciento (15%) estatuido a veinte por ciento (20%), y de cien dólares ($100) a mil dólares ($1,000). No obs-tante, al aprobarse en la Cámara de Representantes, la enmienda fue eliminada, dejándose inalterado en cuanto a este extremo el inciso (b) del Art. 11 de la Ley Núm. 80, supra.(9)
En conformidad con el proceso legislativo, la medida fue enviada al Senado en su versión final. Dicho cuerpo aprobó la medida con las enmiendas recomendadas en el Informe de la Comisión de Gobierno, incluso la enmienda siguiente:
En todo pleito fundado en esta ley, el tribunal celebrará una conferencia con anterioridad al juicio no más tarde de [treinta (30)] de veinte (20) días después de contestada la demanda. Terminada dicha conferencia, si en su criterio hubiere razones suficientes, más allá de las circunstancias de existir alegacio-nes conflictivas para creer que su despido fue sin justa causa, dictará una orden para que en término improrrogable de [quince (15)] diez (10) días, el patrono demandado deposite en la secretaría del tribunal una suma equivalente a la compen-sación total a la cual tendría derecho el empleado, y además, una cantidad para honorarios de abogado que nunca será me-nor del [quince (15)] veinte (20) por ciento del total de la com-pensación o cien dólares [($100)], la que fuere mayor.(10)
Empero, el Texto de Aprobación en Votación Final por el *294 Senado —que fue referido posteriormente a la Cámara de Representantes— eliminaba la referencia al “quince (15)” sin proveer un “veinte (20) por ciento” como sustitución. Así las cosas, la Cámara de Representantes concurrió con las enmiendas que introdujo el Senado el 26 de septiembre de 2006.(11)
Por lo tanto, no podemos sino concluir que aunque el estatuto se aprobó cumpliendo con el procedimiento constitucional y reglamentario, por un error en la impresión del Texto de Aprobación en Votación Final por el Senado se dejó fuera cualquier referencia a un porcentaje en el texto ante la consideración del cuerpo originador. No obstante, tal como hemos expresado,
... si una palabra, frase o disposición ha sido aprobada por inadvertencia o error, especialmente si es contraria al resto de la ley o limitaría la efectividad de ésta, se puede eliminar. [B]ajo las mismas circunstancias se puede añadir una frase o palabras, para que pueda cumplir con la intención legislativa. Passalacqua v. Mun. de San Juan, 116 D.P.R. 618, 623 (1985). Véase Atiles, Admor. v. Comisión Industrial, 77 D.P.R. 16 (1954). Véase, además, F.J. McCaffrey, Statutory Construction: a statement and exposition of the general rules, Nueva York, Ed. Central Book Company, Inc., 1953, pág. 34.
Por consiguiente, analicemos, además, la trayectoria histórica de la exigencia de que el patrono perdidoso pague los honorarios de abogado por la reclamación.
En sintonía con el objetivo de proteger al obrero de toda legislación protectora del trabajo, el propósito de la *295 Ley Núm. 80, supra, es garantizar un remedio económico adecuado a los empleados despedidos sin justa causa y, a su vez, desalentar la incidencia de este tipo de despido. Véase Exposición de Motivos de la Ley Núm. 80, supra. Por lo tanto, es un estatuto reparador.
Cónsono con lo anterior, y para evitar que se reduzca el valor de la indemnización recibida, nuestro ordenamiento jurídico prohíbe el cobro de honorarios de abogado a los trabajadores o empleados que reclaman contra sus patronos. Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 L.P.R.A. secs. 3114-3117. Por el contrario, en caso de que se conceda al empleado una reclamación al amparo de la legislación laboral, recae sobre el patrono el pago de los honorarios. 32 L.P.R.A. sec. 3115; Ortiz y otros v. Mun. de Lajas, 153 D.P.R. 744 (2001).
Así, desde la aprobación de la Ley Núm. 80, supra, esta ha requerido que el patrono deposite una cantidad para honorarios de abogado que nunca será menor del quince por ciento (15%) del total de la compensación o cien dólares ($100), la que sea mayor.
No obstante, al promulgarse la Ley Núm. 128, supra, para enmendar la Ley Núm. 80, supra, “con el propósito de aumentar la indemnización pecuniaria a que tiene derecho un empleado despedido sin justa causa, establecer un nuevo cómputo de indemnización y aumentar la garantía en aseguramiento de sentencia”, ocurre la omisión descrita.(12) Sin embargo, como observáramos del trámite legislativo, dicha ley no buscaba modificar la política pú-blica que emana de la Ley Núm. 80, supra, sino evitar que se continuara afectando, inter alia, la función desalenta-dora del estatuto por prácticas observadas en la empresa privada.(13) Asimismo, surge del historial legislativo la in- *296 tención de mantener un porciento base para el cómputo de los honorarios de abogado que el patrono pagará en caso de probarse la falta de justificación del despido, ya sea éste un quince por ciento (15%) o un veinte por ciento (20%), pero no disminuirlo.
Según lo anterior, y del mismo texto de la ley, podemos colegir que la intención de la Asamblea Legislativa fue mantener un porciento base —igual o mayor al que decre-taba la ley desde 1976— para el cómputo de los honorarios de abogado que pagaría el patrono en caso de falta de jus-tificación del despido. Empero, por error o inadvertencia se omitió un porcentaje específico que propicia el propósito mismo de la Ley Núm. 80, supra. En conformidad con lo expresado, el inciso (b) del Art. 11 de la Ley Núm. 80, supra, se debe leer con el quince por ciento (15%) añadido. Esto hasta que la Asamblea Legislativa disponga otra cosa.(14)
Por consiguiente, en lo pertinente, la ley determina que:
En todo pleito fundado en las secs. 185a a 185m de este titulo, el tribunal celebrará mía conferencia con anterioridad al juicio no más tarde de veinte (20) días después de contes-tada la demanda. Terminada dicha conferencia, si en su crite-rio hubiere razones suficientes, más allá de las circunstancias de existir alegaciones conflictivas para creer que su despido fue sin justa causa, dictará una orden para que en término improrrogable de diez (10) días, el patrono demandado depo-site en la secretaría del tribunal una suma equivalente a la compensación total a la cual tendría derecho el empleado, y además, una cantidad para honorarios de ahogado que nunca será menor del quince porciento (15%) del total de la compen-sación o cien dólares ($100), la que fuere mayor. (Enfasis suplido.) 29 L.P.R.A. sec. 185k(b).
*297 IV
Al examinar, entonces, si la Ley Núm. 80, supra, provee meramente un parámetro al que está limitado el juzgador como arguye la peticionaria, nos detenemos en la frase que expresa que la cantidad para honorarios de abogado “nun-ca será menor” del porciento dispuesto o de cien (100) dó-lares, la que sea mayor. Atendiendo a la más corriente y usual significación de estas palabras, concluimos que la ley es clara y libre de ambigüedad al disponer de una cantidad mínima en concepto de honorarios de abogado. A esto se añade el propósito —reparador para el obrero y desalenta-dor para el patrono— de la Ley Núm. 80, supra, que per-mea nuestra interpretación, así como a que no podemos intercalar restricciones en una ley por fíat judicial que no aparecen de su texto y que el legislador no tuvo a bien imponer. Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966).
Por lo tanto, el juzgador puede otorgar una suma mayor a la antes expuesta. Favorecer una interpretación contra-ria equivaldría a ignorar el propósito reparador de la Ley Núm. 80, supra. Sin embargo, entendemos prudente que cuando la suma a otorgarse en concepto de honorarios su-pere el mínimo dispuesto en ley, el juzgador debe fijarla en conformidad con los criterios para determinar honorarios razonables que establecimos en López Vicil v. ITT Intermedia, Inc., 143 D.P.R. 574 (1997). De esta forma, la cantidad otorgada será revisable y se evitarían posibles abusos de discreción.
Así las cosas, en López Vicil v. ITT Intermedia, Inc., supra, establecimos una cuantía general de veinticinco por ciento (25%) de la indemnización base concedida al trabajador a recibir en concepto de honorarios de abogado por una reclamación al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146-151. Esto al concluir que los casos por discrimen tienden a
*298 ser más complicados y costosos que aquellos según la Ley Núm. 80, supra, que proveía una cuantía no menor del quince por ciento (15%). No obstante, en dicho caso aclara-mos que en aquellas situaciones en las que el abogado es-time que se justifica una cuantía mayor en concepto de honorarios, este podrá solicitar que el tribunal le permita cobrar una tarifa a base de las horas trabajadas por medio de un memorando juramentado en el que detalle tanto las horas trabajadas como la tarifa a cobrar. López Vicil v. ITT Intermedia, Inc., supra, pág. 583. Por otro lado, el juzgador tendrá discreción para aceptar o modificar la suma de ho-norarios reclamada en el memorando. No obstante, “debe-rá consignar por escrito sus razones para llegar a determi-nada suma”. Id. pág. 584.
En el caso de autos, no consta en la Sentencia ni surge del expediente justificación alguna para conceder un vein-ticinco por ciento (25%) de honorarios de abogado.
V
Por lo antes expuesto, confirmamos en parte y revoca-mos en parte la Sentencia recurrida. Inicialmente la cuan-tía a concederse equivale al quince por ciento (15%) o cien dólares ($100), lo que sea mayor. No obstante, devolvemos el caso al Tribunal de Primera Instancia para que, según lo aquí resuelto y en caso de que el abogado de la recurrida estime que se justifica una cuantía mayor en concepto de honorarios, lo solicite en conformidad con esta Opinión.

Se dictará sentencia de conformidad.

 29 L.P.R.A. sec. 185k.

 29 L.P.R.A. sec. 185(a) et seq.

 32 L.P.R.A. sec. 3118 et seq.

 La compañía es un negocio de venta de comida rápida.

 Explicó la peticionaria que la recurrida utilizó para beneficio propio el depó-sito de la tienda correspondiente al 26 de diciembre de 2007 y que el 2 de enero de 2008, al no poder reponer el dinero, se lo pidió prestado a su jefe inmediato, el Gerente de Distrito. El 11 de enero de 2008, la recurrida alegadamente repitió dicha práctica, toda vez que no depositó el dinero correspondiente de ese día hasta el subsiguiente día, a saber, el 13 de enero de 2008.

 La peticionaria solicitó autorización al Tribunal de Primera Instancia para regrabar los procedimientos, mas no al Tribunal de Apelaciones. El foro primario aprobó la regrabación de la vista con una duración de aproximadamente tres (3) horas con treinta (30) minutos el 26 de agosto de 2009. Alega la peticionaria que la transcripción se completó el 30 de noviembre de 2009. Véase Apéndice de la Petición de certiorari, págs. 6 y 7. La Sentencia recayó el 27 de octubre de 2009 y se notificó el 29 de octubre de 2009.

 Ciertamente, hemos expresado que “en aquellos casos donde sólo se precep-túa la resolución final sin mayor explicación, el Tribunal de Apelaciones puede, motu proprio o a solicitud de parte, ordenar al tribunal de instancia que fundamente su determinación. Puede],] además],] solicitar que se eleve la transcripción de la vista de supresión de evidencia],] o que las partes presenten una exposición estipulada de la prueba, en aras de poder cumplir de manera competente con su función revisora”. (Énfasis suplido.) Pueblo v. Moreno Valentín, 168 D.P.R. 233, 243-244 (2006). Esa no es la situación en el caso de autos.

 Véase Acevedo Vilá v. Aponte Hernández, 168 D.P.R. 443, 465 (2006) (“El aludido proceso depende, en gran medida, de la reglamentación que hayan aprobado ambos cuerpos [puesto que] nuestra Constitución establece que ‘[c]ada Cámara ... adoptará las reglas propias de cuerpos legislativos para sus procedimientos y go-bierno interno ...’. Const. E.L.A., supra, ed. 1999, pág. 371”).

 Surge del Diario de Sesiones de la Cámara de Representantes de 29 de agosto de 2005 la enmienda que propuso el Representante García Colón para man-tener el texto original de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185(a) eí seq., en cuanto al quince por ciento (15%) de honorarios de abogado. Esto por entender suficiente el aumento automático en honorarios de abogado en respuesta al aumento en el cómputo de la indemnización del empleado.

 Es regla establecida en el proceso legislativo ante el Senado que al presen-tarse una medida que enmiende una ley vigente, las partes del texto a ser eliminado aparecerán en letras ennegrecidas y entre llaves, mientras que las que se añadan al texto aparecerán en letra cursiva. Por otro lado, cuando un Informe de Comisión proponga la aprobación de enmiendas para el proyecto en cuestión, estas aparecerán en letra simple y subrayadas cuando sugieran texto adicional o tachadas cuando sugieran texto eliminado. Reglamento del Senado de 2005, Secs. 15.10 y 32.9, págs. 52 y 91. Puede observarse en el Informe de la Comisión de Gobierno y Asuntos Laborales el uso de ambas reglas.

 Surge del Diario de Sesiones de la Cámara de Representantes de 29 de agosto de 2005, con relación al inciso pertinente, que el Secretario de la Cámara informó la aprobación que hizo el Senado del P. de la C. 631 de 19 de enero de 2005, Ira Sesión Ordinaria, 15ta Asamblea Legislativa, con las enmiendas siguientes:
Página 4, línea 16, eliminar “treinta (30)”
Página 4, línea 21, eliminar “quince (15)”
Página 5, línea 2, eliminar “quince (15)”
Página 5, línea 3, eliminar “(100)”
Dicho Cuerpo concurrió con estas y otras enmiendas que introdujo el Senado al referido proyecto.

 Título, Ley Núm. 128, infra.

 La Asamblea Legislativa expresa su preocupación de la manera siguiente:
“La protección de la Ley Núm. 80, [supra], se ha probado que es un remedio poco efectivo para el empleado despedido sin justa causa en comparación con los benefi- *296 cios que recibe la empresa al despedir al obrero.
“En los últimos años ha proliferado la práctica en las empresas privadas de despedir trabajadores sin justa causa cuando éstos llevan quince (15) o más años en la empresa. ... [L]e resulta más barato despedirlo y pagarle la mesada, que mantener un empleado cuyo sueldo y retiro más cercano le redundaría en gastos mayores.” Exposición de Motivos de la Ley Núm. 128 de 7 de octubre de 2005.

 Cabe señalar que actualmente se encuentra ante la consideración de la Asamblea Legislativa el P. de la C. 1205 de 17 de febrero de 2009, Ira Sesión Ordi-naria, 16ta Asamblea Legislativa, para proveer el porciento omitido.