

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carmen L. Hernández Maldonado<br><br>Recurrida<br><br>v.<br><br>The Taco Maker, Inc.<br><br>Peticionario | Certiorari<br><br>2011 TSPR   42<br><br>181 DPR _____ |

Número del Caso: CC     - 2010 - 47

Fecha: 24 de marzo de 2011

Tribunal de Apelaciones:

Región Judicial de Ponce Panel, VII

Juez Ponente:

Hon. Sixto Hernández Serrano

Abogado de la Parte Peticionaria:

Lcdo. José M. Ramírez Hernández

Abogado de la Parte Recurrida:

Lcdo. Carlos M. Cabrera Colón

Materia:     Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicació        n oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen L. Hernández Maldonado

    Recurrida

        v.

The Taco Maker, Inc.

    Peticionario

*Certiorari*

CC-2010-0047

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 24 de marzo de 2011.

Comparece ante nos, The Taco Maker, Inc., en adelante la peticionaria, y nos solicita la revisión de una Sentencia del Tribunal de Apelaciones. Mediante dicho dictamen, el foro apelativo intermedio confirmó una Sentencia del Tribunal de Primera Instancia que declaró Con Lugar una Querella por despido injustificado impuesta contra la peticionaria.

En el día de hoy nos corresponde interpretar, *inter alia*, el lenguaje del inciso (b) del Art. 11 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada[1], referente a los honorarios de abogado.

_____

[1] 29 L.P.R.A. sec. 185k.

Expongamos los hechos que dieron génesis a la controversia de autos.

I

El 17 de septiembre de 2008, la señora Carmen Lydia Hernández Maldonado, en adelante la recurrida, instó Querella contra la peticionaria, al amparo de la Ley Núm. 80, *supra,*[2] y del procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada.[3] Al momento de su despido la recurrida había trabajado con la compañía, mediante Contrato sin tiempo determinado, como Gerente de Tienda desde el 27 de mayo de 1997 hasta el 17 de enero de 2008.[4] En la Querella interpuesta la recurrida alegó que había sido despedida de su empleo injustificadamente en contravención a lo dispuesto en la Ley Núm. 80, *supra*.

En la Querella instada, la recurrida planteó que la razón ofrecida para su despido fue falta de confianza por alegadamente no realizar un depósito a tiempo. En el escrito, la recurrida arguyó que a ella no le correspondía realizar dicho depósito ya que el día imputado estaba ausente del trabajo. A su vez, argumentó que no se justificaba su despido como la primera alternativa ante la situación alegada. En consecuencia, peticionó la

---

[2]  29 L.P.R.A. sec. 185(a) *et seq.*
[3]  32 L.P.R.A. sec. 3118 *et seq.*
[4] La compañía es un negocio de venta de comida rápida.

correspondiente mesada, así como el veinticinco por ciento (25%) por concepto de honorarios de abogado.

El 25 de septiembre de 2008, la peticionaria presentó alegación responsiva negando la mayoría de las alegaciones. Levantó como defensas afirmativas falta de honestidad de la recurrida.[5] En cuanto a la partida por concepto de honorarios de abogado solicitada la peticionaria expresó que los mismos "en estos casos son del 15% de la cantidad que el empleado reclame". Apéndice de Petición de *Certiorari*, pág. 51.

Trabada la controversia entre las partes, se celebró la vista en su fondo. Como parte de la prueba testifical de la peticionaria declararon los señores José Manuel Rivera Soto, Gerente de Distrito y Supervisor de la recurrida, y Oscar Soto Colón, Presidente de la compañía.

Completados los trámites procesales, el Tribunal de Primera Instancia declaró Con Lugar la Querella presentada. Determinó el foro de instancia que la peticionaria no había podido probar que el despido había sido justificado. Entre otros, dicho foro resaltó las contradicciones en los testimonios sobre la ocurrencia de los alegados hechos que originaron el despido, la falta de manuales al empleado, la

---

[5] Explicó la peticionaria que la recurrida utilizó para beneficio propio el depósito de la tienda correspondiente al 26 de diciembre de 2007 y que el 2 de enero de 2008, al no poder reponer el dinero se lo pidió prestado a su jefe inmediato, el Gerente de Distrito. El 11 de enero de 2008, la recurrida alegadamente repitió dicha práctica toda vez que no depositó el dinero correspondiente de ese día hasta el subsiguiente día, a saber, 13 de enero de 2008.

ausencia de evaluaciones negativas respecto a la recurrida y el hecho de que ante hechos similares otros empleados fueran suspendidos y no despedidos. Expuso el foro *a quo* que el testimonio del señor José Manuel Rivera Soto no le había merecido credibilidad. Dicho testigo declaró que la recurrida había tomado aproximadamente dos mil dólares ($2,000) del depósito de la tienda para su uso personal.

Entre sus conclusiones, el Tribunal de Primera Instancia apuntó que la recurrida había tenido una relación amorosa con un empleado de la compañía a quien el Presidente de la peticionaria quería como a un hijo. Dicha relación culminó por decisión de la recurrida, previo al despido. En específico expuso el Tribunal de Primera Instancia

> [e]s claro que en el presente caso se estableció por la querellante mediante preponderancia de prueba que la misma fue despedida injustificadamente y que es merecedora de la correspondiente mesada y los honorarios de abogados. El patrono no probó sus alegaciones relacionadas con los depósitos, y mucho menos que no seguir dichos procedimientos conllevara el despido.
>
> Abona a lo anterior las contradicciones en los testimonios sobre la ocurrencia de los alegados hechos que conllevaron al despido de la querellante; la falta de manuales que expliquen o indiquen al empleado la sanción por la violación realizada; el hecho de que otros empleados por "hechos similares" recibieran una suspensión y no el despido; y la falta de evaluaciones negativas (tenemos un récord de 10 años de trabajo eficiente y entonces dos amonestaciones en menos de quince días).

> La querellante compartía la responsabilidad de los depósitos en cuestión, en ambos casos, con otras personas. En la primera ocasión el responsable directo era una subalterna suya, que no testificó. El Tribunal puede entender que la querellante era en última instancia responsable de su subalterna, pero si el problema era de supuesta deshonestidad, el testimonio de aquella hubiera sido importante y no se trajo al Tribunal. En la segunda ocasión la querellante estaba ausente y el responsable era su supervisor inmediato, que ha resultado ser protagonista de los hechos en este caso, y cuyo testimonio no logró establecer, a juicio del Tribunal, la teoría de la parte querellada. Este es el mismo señor que, si le hubiésemos creído, hubiera sido encubridor de la querellante en el supuesto uso ilegal de los fondos de la querellada, porque le habría ayudado a ocultarlo.

En consecuencia, el Tribunal de Primera Instancia condenó a la peticionaria a pagarle a la recurrida la cantidad de diecisiete mil ochocientos noventa y tres dólares con setenta y siete centavos ($17,893.77) por concepto de la mesada, más el veinticinco por ciento (25%) de dicha cantidad por concepto de honorarios de abogado.

Insatisfecha, la peticionaria acudió al Tribunal de Apelaciones el cual mediante Sentencia del 27 de octubre de 2009, notificada el 29 de octubre de 2009, confirmó el dictamen recurrido. La peticionaria instó reconsideración. Ésta fue denegada.

Inconforme, la compañía peticionaria acude ante nos mediante el recurso de *certiorari* señalando los errores siguientes:

> **Erró el Honorable Tribunal sentenciador al resolver un caso ante su consideración utilizando la doctrina de que no intervendrá con las determinaciones del tribunal sentenciador en ausencia de error manifiesto, perjuicio indebido parcialidad teniendo ante su consideración prueba documental que sostiene lo contrario.**
>
> **Erró el Honorable Tribunal sentenciador al concluir que el hecho de que un empleado utilice fondos del patrono para fines propios no es causa suficiente para el despido en la primera ofensa.**
>
> **Erro el Honorable Tribunal sentenciador al adjudicar un 25% de honorarios de abogado cuando la Ley [Núm.] 80 de Despido Injustificado establece un 15% o $100 lo que sea mayor de la cuantía adjudicada.**

Examinado el recurso, acordamos expedir. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

En su primer señalamiento de error, la peticionaria nos alega que incidió el Tribunal de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia y darle deferencia a la apreciación de la prueba testifical consistente en el solo testimonio de la querellante y los testigos del patrono. Esto a pesar de existir prueba documental admisible que, a su entender, sostiene las razones para el despido: un recibo de pago, la carta de despido y la contestación a Querella. Éstos últimos dos (2) documentos hacen referencia a unas supuestas declaraciones que hizo la recurrida y que la peticionaria alega son sostenidas por sus testigos, pero

que no fueron rebatidas. Añade que el foro intermedio emitió la Sentencia recurrida sin el beneficio de una transcripción, exposición narrativa o estipulada de la prueba.

A pesar de que la peticionaria indica que no pretende presentar la falta de consideración de la transcripción como error - por reconocer que debió notificar su intención de presentar la trascripción - el error señalado y discutido implica la impugnación de la apreciación de la prueba testifical ofrecida en instancia.[6]

La Regla 76 del Reglamento del Tribunal de Apelaciones trata sobre los requisitos para presentar una transcripción. Tal disposición reza:

> Una parte en una apelación o en un recurso de *certiorari* ante el Tribunal de Apelaciones notificará al Tribunal de Apelaciones no más tarde de diez (10) días desde que se presentó el escrito de apelación o se notificó la expedición del auto solicitado que se propone transcribir la prueba oral. En esa moción, la parte proponente expresará las razones por las cuales considera que la transcripción es indispensable, y que propicia mayor celeridad en los procesos que la presentación de una exposición estipulada o una exposición narrativa. […] 4 L.P.R.A. AP. XXII-B, Regla 76(A).

Más adelante, en su inciso (B) el precepto dispone:

---

[6] La peticionaria solicitó al Tribunal de Primera Instancia autorización para regrabar los procedimientos, mas no al Tribunal de Apelaciones. El foro primario aprobó la regrabación de la vista con una duración de aproximadamente 3:30 horas el 26 de agosto de 2009. Alega la peticionaria que la transcripción fue completada el 30 de noviembre de 2009. Véase, Apéndice de la Petición de *Certiorari*, págs. 6 y 7. La Sentencia recayó el 27 de octubre de 2009 y fue notificada el 29 de octubre de 2009.

> Autorizada la transcripción, su proponente podrá solicitar al Tribunal de Primera Instancia la regrabación de los procedimientos. La moción a esos efectos será presentada dentro de los diez (10) días siguientes a la notificación de la orden del Tribunal de Apelaciones. *Íd.*

A su vez, surgen de las disposiciones reglamentarias pertinentes los términos para la presentación de exposiciones narrativas. Véase, 4 L.P.R.A. AP. XXII-B, Regla 76.1. En cuanto a la Exposición Narrativa Estipulada de la Prueba en un recurso de apelación, la Regla 76.1(A)(1) dispone que, dentro de los diez (10) días de haberse notificado el escrito de apelación, la parte apelante deberá notificar a la apelada que se propone presentar la misma. Asimismo, en el inciso (2) del precepto se dispone que dentro de los treinta (30) días siguientes a la presentación de la apelación, la parte apelante preparará y someterá al Tribunal de Apelaciones un Proyecto de Exposición Narrativa de la Prueba Oral pertinente al recurso. 4 L.P.R.A. AP. XXII-B, Regla 76.1(A)(1).

Una evaluación del expediente del caso de autos revela de manera diáfana que la peticionaria incumplió con las disposiciones reglamentarias; incumplimiento que ésta misma reconoce.

Sabido es que ante la ausencia de indicio de que el foro primario incurriera en manifiesto error, prejuicio, parcialidad o pasión al aquilatar la evidencia desfilada, no intervendremos con su apreciación de la prueba. *Miranda*

*Cruz y otros v. S.L.G. Ritch*, res. el 18 de septiembre de 2009, 176 D.P.R. __, 2009 TSPR 144, 2009 J.T.S. 147; *Soc. de Gananciales, v. Centro Gráfico*, 144 D.P.R. 952 (1998). Esto pues, es quien está en mejor posición de aquilatar la prueba testifical.  En consecuencia, ante la ausencia de la prueba oral, el Tribunal de Apelaciones no contaba con los elementos para descartar la apreciación razonada y fundamentada de la prueba realizada por el Tribunal de Primera Instancia.[7]  Ante la ausencia de lo anterior, este Foro tampoco está en posición de descartar la apreciación de la prueba que realizara el foro de instancia, por lo que no intervendremos con la misma. *Álvarez v. Rivera*, 165 D.P.R. 1, 13 (2005).

Hemos señalado, y hoy reiteramos, que las disposiciones reglamentarias sobre los recursos a presentarse ante el Tribunal de Apelaciones deben observarse rigurosamente. Los abogados vienen obligados a cumplir fielmente el trámite prescrito en las leyes y reglamentos aplicables para el perfeccionamiento de los recursos y no puede quedar al arbitrio de los abogados decidir qué disposiciones reglamentarias deben acatarse y cuándo. *Arriaga v. F.S.E.*, 145 D.P.R. 122 (1998).  Por lo

---

[7] Ciertamente hemos expresado que "en aquellos casos **donde sólo se preceptúa la resolución final sin mayor explicación**, el Tribunal de Apelaciones puede, *motu proprio* o a solicitud de parte, ordenar al tribunal de instancia que fundamente su determinación. Puede además solicitar que se eleve la transcripción de la vista de supresión de evidencia, o que las partes presenten una exposición estipulada de la prueba, en aras de poder cumplir de manera competente con su función revisora." *Pueblo v. Moreno Valentín*, 168 D.P.R. 233, 243-245 (2006). (Énfasis suplido). Esa no es la situación en el caso de autos.

tanto, nos limitamos al análisis de la controversia expuesta en el tercer señalamiento de error.

### III

En su tercer error, la peticionaria nos plantea que el Tribunal de Primera Instancia concedió para honorarios de abogado un veinticinco por ciento (25%) a computarse sobre el total de la compensación del empleado. Es su contención que la actuación del foro primario contraviene el lenguaje del inciso (b) del Art. 11 de la Ley Núm. 80, *supra,* el cual entiende no establece un límite sino un parámetro en la concesión de honorarios de abogado. Descansando en su *ratio decidendi* es su contención que el Tribunal de Primera Instancia no tenía discreción para establecer un por ciento mayor en cuanto a los honorarios de abogados. A tales efectos, interpreta la precitada disposición de la siguiente manera: "la cuantia (sic) hay que tomarla con un minimo (sic) de cien dolares (sic) o el el (sic) 15% lo que sea mayor". Véanse, Petición de *Certiorari*, pág. 6; Alegato de la Parte Peticionaria, pág. 12.

No obstante, previo a discutir este punto, debemos clarificar que el inciso en cuestión fue enmendado mediante la Ley Núm. 128 de 7 de octubre de 2005. Así, durante el trámite de esta ley se dejó fuera la frase "menor del quince (15) por ciento del total de la compensación" siendo el lenguaje final "menor del por ciento del total de la

compensación". Por lo tanto, la ley no prescribe expresamente por ciento alguno.

Como resultado de esa omisión, consideramos pertinente examinar el trámite legislativo de la Ley Núm. 128, *supra*, y repasar los principios de hermenéutica.

Así pues, para la aprobación de toda ley debe cumplirse con el trámite requerido por la Constitución de Puerto Rico y suplementado por los Reglamentos de la Cámara de Representantes y del Senado.[8] Art. III, Secs. 17-19, Const. E.L.A., L.P.R.A., Tomo I. Véase además, R. Elfren Bernier y otros, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed., San Juan, Publicaciones JTS, Inc., 1987, págs. 44, 46.

En extrema síntesis, el trámite legislativo comienza con la presentación de un proyecto en la Secretaría de la Cámara a la cual pertenece y de donde se refiere a la Comisión correspondiente para su estudio. Entonces, se efectúa su Primera Lectura e impresión. Oficina de Servicios Legislativos, *La Asamblea Legislativa y el Proceso Legislativo*, 1997, págs. 41 y 42. Luego de evaluar y analizar la medida, la Comisión asignada rinde un Informe

---

[8] Véase, *Acevedo Vilá v. Aponte Hernández*, 168 D.P.R. 443, 465 (2006) ("El aludido proceso depende, en gran medida, de la reglamentación que hayan aprobado ambos cuerpos [puesto que] nuestra Constitución establece que "[c]ada Cámara … adoptará las reglas propias de cuerpos legislativos para sus procedimientos y gobierno interno …". Const. E.L.A., supra, ed. 1999, pág. 371.")

con su correspondiente recomendación, salvo que la Cámara la descargue de esta función constitucional. *Íd*. pág. 43.

En caso de que la referida Comisión someta un Informe positivo aprobando la medida con enmiendas, la medida es nuevamente impresa y referida a la Comisión de Calendario y Reglas Especiales de Debate para su inclusión en el calendario. Ya ante el Hemiciclo se lleva a cabo la Segunda Lectura, entiéndase la lectura de la medida y el Informe, así como su discusión. Entonces se procede a la votación. *Íd*.

Ya aprobada la medida por la Cámara de Origen, ésta se imprime en letra uniforme y llevará en el encabezamiento de la medida "Texto de Aprobación Final por Cámara o Senado" (según aplique), así como, la fecha de aprobación. Entonces, el Secretario del Cuerpo remitirá al otro cuerpo copias de la medida, según fuera aprobada. *Íd*. pág. 43. Idéntico trámite es seguido en el Segundo Cuerpo.

No obstante, cuando el Segundo Cuerpo aprueba la medida con enmiendas, tal como sucedió en el caso ante nos, la misma regresa al Cuerpo de origen para que éste precise si concurre o no con las enmiendas. De concurrir con dichas enmiendas, la medida se imprime en formato de enrolado, se firma por los Presidentes de la Cámara de Representantes y del Senado y, entonces, se envía al Gobernador para su

consideración. *Acevedo Vilá v. Aponte Hernández*, 168 D.P.R. 443 (2006).

Ahora bien, ya vigente una ley ésta tiene que ser interpretada para ser aplicada. *Pueblo v. Tribunal Superior*, 98 D.P.R. 750 (1970). Para ello, como parte de nuestra obligación, los tribunales debemos considerar el propósito por el cual fue promulgada e interpretarla de forma tal que viabilice el mismo. A esos efectos, "[c]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. Esto considerando que "[l]as palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces". Art. 15 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 15. De así serlo, no hay que buscar la intención legislativa fuera del texto de la ley. *Asoc. Fcias. v. Caribe Specialty et al. II*, res. en 23 de septiembre de 2010, 179 D.P.R. __ (2010), 2010 T.S.P.R. 204, 2010 J.T.S. 213.

Un examen del historial legislativo del P. de la C. 631 de 19 de enero de 2005, 1ra Sesión Ordinaria, 15ta Asamblea Legislativa, que dio génesis al estatuto mencionado, revela que al radicar dicho proyecto se sugirió como enmienda aumentar la cantidad para honorarios de

abogados del quince por ciento (15%) estatuido a veinte por ciento (20%) y de cien dólares ($100) a mil dólares ($1,000). No obstante, al aprobarse en la Cámara de Representantes, la propuesta enmienda fue eliminada, dejándose inalterado en cuanto a este extremo el inciso (b) del Art. 11 de la Ley Núm. 80, *supra*.[9]

De conformidad con el proceso legislativo, la medida fue enviada al Senado en su versión final. Dicho cuerpo aprobó la medida con las enmiendas recomendadas en el Informe de la Comisión de Gobierno, incluyendo entre ellas la enmienda siguiente:

> En todo pleito fundado en esta ley, el tribunal celebrará una conferencia con anterioridad al juicio no más tarde de **[treinta (30)]** de veinte (20) días después de contestada la demanda. Terminada dicha conferencia, si en su criterio hubiere razones suficientes, más allá de las circunstancias de existir alegaciones conflictivas para creer que su despido fue sin justa causa, dictará una orden para que en término improrrogable de **[quince (15)]** diez (10) días, el patrono demandado deposite en la secretaría del tribunal una suma equivalente a la compensación total a la cual tendría derecho el empleado, y además, una cantidad para honorarios de abogado que nunca será menor del **[quince (15)]** veinte (20) por ciento del total de la

---

[9] Surge del Diario de Sesiones de la Cámara de Representantes de 29 de agosto de 2005 la enmienda propuesta a la medida por el Representante García Colón para mantener el texto original de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185(a) *et seq.*, en cuanto al quince por ciento (15%) de honorarios de abogado. Esto por al entender suficiente el aumento automático en honorarios de abogados en respuesta al aumento en el cómputo de la indemnización del empleado.

compensación o cien dólares **[($100)]**, la que fuere mayor.[10]

Empero, el *Texto de Aprobación en Votación Final por el Senado* - que fuera posteriormente referido a la Cámara de Representantes - eliminaba la referencia al "quince (15)" sin proveer un "veinte (20) por ciento" como sustitución. Así las cosas, la Cámara de Representantes concurrió con las enmiendas introducidas por el Senado el 26 de septiembre de 2006.[11]

Por lo tanto, no podemos sino concluir que aunque el estatuto se aprobó cumpliendo con el procedimiento constitucional y reglamentario, por un error en la impresión del *Texto de Aprobación en Votación Final por el Senado* se dejó fuera cualquier referencia a un porcentaje en el texto ante la consideración del cuerpo originador. No obstante, tal como hemos expresado,

---

[10] Es regla establecida en el proceso legislativo ante el Senado que al radicarse una medida que enmiende una ley vigente, las partes del texto a ser eliminado aparecerá en letras ennegrecidas y entre llaves, mientras que las que se añadan al texto aparecerán en letra cursiva. Por otro lado, cuando un Informe de Comisión proponga la aprobación de enmiendas para el proyecto en cuestión, éstas aparecerán en letra simple y subrayado cuando sugieran texto adicional o en tachado cuando sugieran texto eliminado. Reglamento del Senado de 2005, secs. 15.10 y 32.9, págs. 52 y 91. Puede observarse del Informe de la Comisión de Gobierno y Asuntos Laborales el uso de ambas reglas.

[11] Surge del Diario de Sesiones de la Cámara de Representantes de 29 de agosto de 2005 con relación al inciso pertinente que el Secretario de la Cámara informó la aprobación por el Senado del P. de la C. 631 de 19 de enero de 2005, 1ra Sesión Ordinaria, 15ta Asamblea Legislativa, con las enmiendas siguientes:
        Página 4, línea 16, eliminar "treinta (30)"
        Página 4, línea 21, eliminar "quince (15)"
        Página 5, línea 2, eliminar "quince (15)"
        Página 5, línea 3, eliminar "(100)"
Dicho Cuerpo concurrió con éstas y otras enmiendas introducidas por el Senado al referido proyecto.

> "si una palabra, frase o disposición ha sido aprobada por inadvertencia o error, especialmente si es contraria al resto de la ley o limitaría la efectividad de ésta, se puede eliminar. [B]ajo las mismas circunstancias se puede añadir una frase o palabras, para que pueda cumplir con la intención legislativa". *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618, 623 (1985). Véase, *Atiles, Admor. V. Comisión Industrial*, 77 D.P.R. 16 (1954). Véase además, F.J. McCaffrey, *Statutory Construction*, New York, Ed. Central Book Company, Inc., 1953,pág. 34.

Por consiguiente, analicemos además la trayectoria histórica de la exigencia de que el patrono perdidoso pague los honorarios de abogado por la reclamación.

En sintonía con el objetivo de proteger al obrero de toda legislación protectora del trabajo, el propósito de la Ley Núm. 80, *supra*, es garantizar un remedio económico adecuado a los empleados despedidos sin justa causa y, a su vez, desalentar la incidencia de este tipo de despido. Véase, Exposición de Motivos de la Ley Núm. 80, *supra.* Por lo tanto, es un estatuto reparador.

Cónsono con lo anterior y en aras de evitar que se reduzca el valor de la indemnización recibida, nuestro ordenamiento jurídico prohíbe el cobro de honorarios de abogado a los trabajadores o empleados que reclaman contra sus patronos. Ley Núm. 402 de 12 de mayo de 1950, según enmendada, 32 L.P.R.A. secs. 3114 *et al.* Por el contrario, en caso de concedérsele al empleado una reclamación al amparo de la legislación laboral, recae sobre el patrono el

pago de los honorarios. *Íd.*, sec. 3115; *Ortiz y Otros v. Mun. de Lajas*, 153 D.P.R. 744 (2001).

Así, desde la aprobación de la Ley Núm. 80, *supra*, ésta ha requerido que el patrono deposite una cantidad para honorarios de abogado que nunca será menor del quince por ciento (15%) del total de la compensación o cien dólares ($100), la que fuere mayor.

No obstante, al promulgarse la Ley Núm. 128, *supra*, para enmendar la Ley Núm. 80, *supra*, "con el propósito de aumentar la indemnización pecuniaria a que tiene derecho un empleado despedido sin justa causa, establecer un nuevo cómputo de indemnización y aumentar la garantía en aseguramiento de sentencia", ocurre la omisión descrita.[12] Sin embargo, como observáramos del trámite legislativo, dicha ley no buscaba modificar la política pública que emana de la Ley Núm. 80, *supra,* sino evitar que se continuara afectando, *inter alia*, la función desalentadora del estatuto por prácticas observada en la empresa privada.[13] Asimismo, surge del historial legislativo la

---

[12] Título, Ley Núm. 128, *infra*.

[13] La Asamblea Legislativa expresa su preocupación de la manera siguiente:

> "La protección de la Ley Núm. 80, *supra*, se ha probado que es un remedio poco efectivo para el empleado despedido sin justa causa en comparación con los beneficios que recibe la empresa al despedir al obrero.
>
> En los últimos años ha proliferado la práctica en las empresas privadas de despedir trabajadores sin justa causa cuando éstos llevan quince (15) o más años en la empresa. […] le resulta más barato despedirlo y pagarle la mesada ,

intención de mantener un por ciento base para el cómputo de los honorarios de abogado a ser pagados por el patrono en caso de probarse la falta de justificación del despido, ya sea éste un quince por ciento (15%) o un veinte por ciento (20%), pero no disminuirlo.

A la luz de lo anterior y del mismo texto de la ley, podemos colegir que la intención de la Asamblea Legislativa fue la de mantener un por ciento base – igual o mayor al que decretaba la ley desde 1976 - para el cómputo de los honorarios de abogado a ser pagados por el patrono en caso de falta de justificación del despido. Empero, por error o inadvertencia se omitió un porcentaje específico que propicia el propósito mismo de la Ley Núm. 80, *supra*. De conformidad con lo expresado, el inciso (b) del Art. 11 de la Ley Núm. 80, *supra*, debe leerse con la adición del quince por ciento (15%). Esto hasta que la Asamblea Legislativa otra cosa disponga.[14]

Por consiguiente, en lo pertinente la ley determina que:

> En todo pleito fundado en las secs. 185a a 185m de este titulo, el tribunal celebrará una conferencia con anterioridad al juicio no más tarde de veinte (20) días después de contestada la demanda. Terminada dicha conferencia, si en su criterio

---

que mantener un empleado cuyo sueldo y retiro más cercano le redundaría en gastos mayores." Exposición de motivos, Ley Núm. 128 de 7 de octubre de 2005.

[14] Cabe señalar que actualmente se encuentra ante la consideración de la Asamblea Legislativa el P. de la C. 1205 de 17 de febrero de 2009, 1ra Sesión Ordinaria, 16ta Asamblea Legislativa, para proveer el por ciento omitido.

hubiere razones suficientes, más allá de las circunstancias de existir alegaciones conflictivas para creer que su despido fue sin justa causa, dictará una orden para que en término improrrogable de diez (10) días, el patrono demandado deposite en la secretaria del tribunal una suma equivalente a la compensación total a la cual tendría derecho el empleado, y además, **una cantidad para honorarios de abogado que nunca será menor del quince por ciento (15%) del total de la compensación o cien dólares ($100), la que fuere mayor**. 29 L.P.R.A. sec. 185k(b). (Énfasis suplido).

## IV

Al examinar entonces si la Ley Núm. 80, *supra,* provee meramente un parámetro al que está limitado el juzgador como arguye la peticionaria, nos detenemos en la frase que expresa que la cantidad para honorarios de abogado "nunca será menor" del por ciento dispuesto o de cien (100) dólares, la que fuera mayor. Atendiendo a la más corriente y usual significación de estas palabras, concluimos que la ley es clara y libre de ambigüedad al disponer de una cantidad mínima en concepto de honorarios de abogado. A esto se añade, el propósito - reparador para el obrero y desalentador para el patrono - de la Ley Núm. 80, *supra,* que permea nuestra interpretación, así como a que no podemos intercalar restricciones en una ley por *fiat* judicial que no aparecen de su texto y que el legislador no tuvo a bien imponer. *Román v. Superintendente de la Policía*, 93 D.P.R. 685 (1966).

Por lo tanto, el juzgador puede otorgar una suma mayor a la antes expuesta. Favorecer una interpretación contraria

equivaldría a ignorar el propósito reparador de la Ley Núm. 80, *supra*. Sin embargo, entendemos prudente que cuando la suma a otorgarse en concepto de honorarios supere el mínimo dispuesto en ley, el juzgador debe fijarla en conformidad con los criterios para determinar honorarios razonables que establecimos en *López Vicil v. ITT Intermedia, Inc.*, 143 D.P.R. 574 (1997). De esta forma la cantidad otorgada será revisable y se evitarían posibles abusos de discreción.

Así las cosas, en *López Vicil v. ITT Intermedia, Inc.*, *supra*, establecimos una cuantía general de veinticinco por ciento (25%) de la indemnización base concedida al trabajador a recibir por concepto de honorarios de abogado por una reclamación al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq*. Esto al concluir que los casos por discrimen tienen da ser más complicados y costosos que aquellos bajo la Ley Núm. 80, *supra,* que proveía una cuantía no menor del quince por ciento (15%). No obstante, en dicho caso aclaramos que en aquellas situaciones en las que el abogado estime que se justifica una cuantía mayor en concepto de honorarios, éste podrá solicitar al tribunal cobrar una tarifa a base de las horas trabajadas por medio de un memorando juramentado en el que detalle tanto las horas trabajadas como la tarifa a cobrar. *Íd*. pág. 583.

Por otro lado, el juzgador tendrá discreción para aceptar o modificar la suma de honorarios reclamada en el

memorando. No obstante, "deberá consignar por escrito sus razones para llegar a determinada suma". *Íd.* pág. 584.

En el caso de autos no consta en la Sentencia ni surge del expediente justificación alguna para conceder un veinticinco por ciento (25%) de honorarios de abogado.

IV

Por lo antes expuesto confirmamos en parte y revocamos en parte la Sentencia recurrida. Inicialmente la cuantía a concederse equivale al quince por ciento (15%) o cien (100) dólares, lo que sea mayor. No obstante, devolvemos el caso al Tribunal de Primera Instancia para que, según lo aquí resuelto y en caso de que el abogado de la recurrida estime que se justifica una cuantía mayor en concepto de honorarios, pueda así solicitarlo en conformidad con esta Opinión.

Se dictará Sentencia de conformidad.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carmen L. Hernández Maldonado

     Recurrida

                                     *Certiorari*

      v.

The Taco Maker, Inc.                  CC-2010-0047

     Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2011.

Por lo antes expuesto confirmamos en parte y revocamos en parte la Sentencia recurrida. Inicialmente la cuantía a concederse equivale al quince por ciento (15%) o cien (100) dólares, lo que sea mayor. No obstante, devolvemos el caso al Tribunal de Primera Instancia para que, según lo aquí resuelto y en caso de que el abogado de la recurrida estime que se justifica una cuantía mayor en concepto de honorarios, pueda así solicitarlo en conformidad con esta Opinión.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo