# 2000 DTA 146

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I-SAN JUAN
## PANEL III

COMPAÑIAS DE TELECOMUNICACIONES
ACARREADORES COMERCIALES DE SERVICIO RADIO MOVIL ("*CMRS*")
COMPAÑIAS DE CABLE TELEVISION

Núm. KLRA-2000-00230

San Juan, Puerto Rico, a 15 de junio de 2000

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Urgell Cuebas y Cordero

## TEXTO COMPLETO DE LA RESOLUCION

Sprint International Caribe, Inc. (Sprint) solicita en este recurso que revoquemos la orden del 2 de marzo de 2000 en que la Junta Reglamentadora de Telecomunicaciones de Puerto Rico (la Junta) no eximió a Sprint de cumplir con el requisito impuesto en las dos últimas oraciones de la sección 11 del Reglamento que establece:

"*11. Restricción Sobre Suspensión de Servicio*

*Si el cliente no efectúa el pago ni agota el proceso establecido en este reglamento, la compañía podrá suspender el servicio transcurridos veinte (20) días a partir del envío de una notificación de suspensión. El servicio no podrá ser suspendido en aquellos días en que al día siguiente la compañía no abre sus oficinas al público. El servicio tampoco podrá ser suspendido un sábado, domingo, día feriado, ni el día laborable anterior a un día feriado.*"

### Antecedentes

La Junta recurrida acepta como correcta la relación de hechos pertinentes presentados por la recurrente Sprint, aunque no acepta como incontrovertibles los motivos y argumentos que Sprint adelanta a favor de su causa. A tal efecto, el litigio en autos se ubica en la siguiente situación de hecho y derecho:

*"La Ley Núm. 33 de 27 de junio de 1985, 27 L.P.R.A. §262 et. seq., fue aprobada por la legislatura con el propósito de regular la desconexión de algunos servicios públicos entonces prestados a la ciudadanía por parte de diferentes corporaciones de servicio público. En particular, de tal forma, se impidió que tales servicios no podrían ser suspendidos un sábado, domingo, día feriado, ni el día laborable previo a tales tres fechas, como tampoco en el día anterior en que la compañía proveedora del servicio público no abra sus oficinas al público."*

En su origen, tal medida legislativa está dirigida a impedir que proveedores de servicios esenciales en Puerto Rico pudiesen ejercer el derecho legal y reglamentario de suspender el servicio a un abonado en una fecha en la cual al abonado se le hiciere dificultoso cumplir con su obligación contraída para restablecer el servicio, debido a que al día o días siguientes la entidad proveedora del servicio no esté operando normalmente.

No obstante, el drástico cambio que en años recientes ha beneficiado a la industria de las telecomunicaciones, tal interés legislativo se mantuvo intacto en el Artículo 10, Capítulo III de la nueva Ley Núm. 213 de Telecomunicaciones del 12 de septiembre de 1996, 27 L.P.R.A. §261 (i) que dispone:

*"Ninguna compañía de cable o de telecomunicaciones, certificada por la Junta bajo las disposiciones de esta Ley, podrá Suspender Servicios a sus Abonados sin cumplir con los procedimientos establecidos en la Ley Núm. 33 de 27 de junio de 1985, según enmendada, la cual por la presente se hace aplicable, en lo pertinente, a la suspensión de servicios por compañías o empresas privadas en el área de cable y telecomunicaciones."*

Dentro de tal contexto normativo, la Junta publicó en la prensa, el 23 de noviembre de 1998, una propuesta de Reglamento Sobre Suspensión de Servicio de Telecomunicaciones y Cable Televisión uniforme para todas las empresas autorizadas a operar en Puerto Rico (Reglamento de Suspensión de Servicio) que incluía las limitaciones de fechas antes indicadas y solicitó a las diferentes empresas interesadas someter comentarios dentro del término de 60 días.

Sprint solicitó que en el ejercicio de la discreción que le concede la ley a la Junta, se le excluyese de tal requisito y para ello argumentó que el contenido de la sección 11 del Reglamento de Suspensión de Servicio sólo tiene sentido dentro de un ambiente monopolístico de servicios públicos esenciales al cual ya no pertenecían las comunicaciones de larga distancia en Puerto Rico. Señaló que la industria local de telecomunicaciones de larga distancia en Puerto Rico no puede ya considerarse esencial y es altamente competitivo, por lo que el abonado no está sujeto a las mismas condiciones de antaño y si el proveedor del momento suspende el servicio, el abonado puede de inmediato obtener otro proveedor. También adujo que sus operaciones se controlan desde el exterior, y no ha logrado establecer un acuerdo con una empresa de telecomunicaciones local para sub-contratar las operaciones de suspensión de servicios en Puerto Rico, por lo que le sería muy difícil y costoso implementar un sistema que le habilite para cumplir con el reglamento.

La Junta no estuvo de acuerdo y, finalmente, mediante Resolución y Orden del 24 de marzo de 2000, por unanimidad de miembros presentes, ante moción en reconsideración de Sprint, dispuso:

*"Luego de examinada la referida moción, esta Junta RESUELVE Y ORDENA:*

*No Ha Lugar. Sprint deberá darle cumplimiento a lo ordenado por esta Junta, y a las disposiciones de la Ley Núm. 33 de 27 de junio de 1985, según enmendada, en cuanto a los días en que está prohibido que se suspenda el servicio."*

De tal dictamen, Sprint recurre e imputa la comisión del siguiente error:

*"Erró la Junta Reglamentadora de Telecomunicaciones al no resolver que el Requisito es innecesario en cuanto a Sprint y al no ejercitar su facultad y deber de desreglamentar la industria de las telecomunicaciones y eximir a Sprint de incluir el Requisito en su Procedimiento."*

La Junta ha comparecido y la causa está sometida.

**Exposición y Análisis**

En resumidas cuentas, Sprint se opone al requisito reglamentario por entender que:

1) El servicio de larga distancia que ofrece en Puerto Rico, ya no es de naturaleza esencial y no se provee en forma monopolista, por lo que el usuario está en plena libertad de accesar a un servicio competidor con meramente comunicarse telefónicamente con otra compañía en cualquier momento que lo desee. A tal respecto, señala a las página 12-13 de su alegato:

*"Esta competencia, más o menos efectiva, hace que los usuarios de servicios de telecomunicaciones, como, por ejemplo, el servicio de larga distancia intraisla, puedan escoger entre múltiples proveedores. El efecto práctico de esta situación, con respecto a una posible desconexión de servicio, es que de una compañía desconectar el servicio de larga distancia intraisla a un cliente, éste puede acudir a otra compañía para que le provea el mismo."*

2) Señala, también, la recurrente que no cuenta con procesos en su sistema operacional que le permitan cumplir con tales requisitos reglamentarios, máxime cuando opera el sistema desde el exterior y no ha podido acordar con una empresa local la sub-contratación de tales operaciones. A tal respecto, añade a la pág. 14 de su escrito:

*"Programar el sistema de Sprint para que pueda discernir entre los días feriados de cada estado de los Estados Unidos, de poder hacerse, sería extremadamente difícil y conllevaría costos sustanciales."*

3) Finalmente, aduce que la Junta tiene la facultad y el deber de haber interpretado *"... su ley habilitadora para asegurarse que se cumple con el propósito legislativo ..."* inmerso en los artículos (i) y (j) del Capítulo I de la Ley de Telecomunicaciones, 27 L.P.R.A. §265(i) y (j), cuyo texto es el siguiente:

*"(i) asegurar que no existan barreras reglamentarias ni procedimientos administrativos innecesarios que entorpezcan la competencia en el mercado;*

*(j) simplificar el proceso reglamentario en aquellas situaciones en que la reglamentación sea necesaria y dirigir la reglamentación al fomento del bienestar del consumidor y a penalizar las prácticas anticompetitivas del mercado de las telecomunicaciones".*

Sprint entiende que al denegar su solicitud, la Junta incumplió con su deber de *"abstenerse de reglamentar asuntos particulares, a menos que esto sea necesario"* y dejó de fomentar la competencia para *"... que sean las fuerzas del mercado y no el gobierno, quien regule la industria de las Telecomunicaciones". "Al no hacerlo, actuó irrazonablemente y contrario al propósito primordial de la Ley de Telecomunicaciones".* (Págs. 15 y 16 del alegato).

Se trata aquí de un asunto especializado, concerniente a la industria de las telecomunicaciones, en su relación directa con su clientela, precisamente dentro del ámbito de tutelaje reglamentario requerido por la ley habilitadora.

No hay duda de que el requisito de original diseño para operar dentro de un ambiente monopolístico de servicio establecido en el 1985 por la Ley Núm. 33, *supra*, para evitar la interrupción de servicios esenciales en fechas poco favorables y para facilitar que el abonado pudiese solventar la situación, fue transportado y reiterado íntegramente por el legislador a la Ley Núm. 2132 de 1996, para que formase parte del nuevo orden legal encargado de reglamentar las telecomunicaciones en Puerto Rico. Por tanto, el reglamento atacado por Sprint realmente responde al mandato legislativo respecto a un asunto de orden administrativo y económico que

ubica claramente dentro de parámetros de legítima intervención legislativa y reglamentaria, independientemente de que en un principio ello se estableciera para operar en un ambiente monopolístico y ahora se traslade a zonas de incipiente competencia.

Sprint señala que sus actuales procesos sistémicos que operan desde el exterior, no le permiten cumplir con los requerimientos de la mencionada Regla 11, y que en el mejor de los casos, requerirá de costosas modificaciones para ello. No obstante, Sprint no abunda en cuanto a detalles, y aunque nos parece que ello ha de consistir en algún cambio de programación, no entendemos que tal factor de costo resulte significativo, máxime cuando la reglamentación es uniforme para la industria.

Aún y cuando sea cierto el planteamiento de Sprint, en torno a la mencionada facilidad y agilidad del actual usuario de servicios de telecomunicaciones de larga distancia para sustituir el proveedor de servicio en cualquier momento, lo cual no consta debidamente acreditado en autos, no compete al foro judicial formular o reformular política pública a tal respecto. Tampoco contamos con el expertise para ello.

*"Es norma reiterada de este Tribunal que merece deferencia sustancial la interpretación del organismo al cual le compete administrar un estatuto, y que tal interpretación no necesita ser la única [para que] merezca esa deferencia, bastando con que sea razonable y consistente con el propósito legislativo."* Comisionado de Seguros de P.R. v. General Accident Insurance Co. of P.R. Ltd., **93 J.T.S. 10,** Opinión y Sentencia de 28 de enero de 1993; ...". Acevedo Arroyo v. Puerto Rico Sun Oil, ___ D.P.R. ___, **98 J.T.S. 74,** pág. 1,063.

*"Aplica, pues, aquí la conocida norma de que las interpretaciones que las agencias hagan de sus propias facultades merecen gran deferencia si son razonables y consistentes con sus propósitos legislativos."* Santiago Mitchell v. F.S.E., res. 13 de agosto de 1996, ___ D.P.R. ___, **96 J.T.S. 106,** pág. 4.

Es doctrina claramente establecida que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Ello es así porque éstos cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se les encomiendan. *Román v. Superintendente de la Policía,* 93 D.P.R. 685, 690 (1966); *Rubín Ramírez v. Trías Monge,* 111 D.P.R. 481, 484-485 (1981). Los Tribunales sólo intervienen con una interpretación adoptada por una agencia, cuando se trate de actuaciones o determinaciones arbitrarias, ilegales o tan irrazonables que constituyan un abuso de discreción. *Comité de Vecinos Pro-Mejoramiento, Inc. v. Junta de Planificación,* ___ D.P.R. ___, **99 J.T.S. 32,** a la pág. 732.

**Dictamen**

Conforme a lo señalado, se deniega la expedición del auto de revisión solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General