Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES

| | | |
|---|---|---|
| OMAR GAMERO ÁLVAREZ; MARÍA LUISA ÁLVAREZ MORELL Y LA SOCIEDAD DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Querellantes Apelados<br><br>v.<br><br>LONGO PUERTO RICO, INC. H/N/C LONGO EN-TECH PUERTO RICO LLC H/N/C LONGO CARIBBEAN INC., CORP.; COMPAÑÍAS ABC; ASEGURADORAS XYZ<br><br>Querellados Apelantes | KLAN202400581 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: D PE2016-0018 SALA 505<br><br>Sobre: Despido Injustificado (Ley Núm. 80 de 30 de mayo de 1976; Procedimiento Sumario) |

Panel especial integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de octubre de 2024.

Comparecen Longo de Puerto Rico, LLC, Longo Caribbean, Inc. y Longo-En Tech Puerto Rico, LLC (conjuntamente "apelantes") mediante recurso de apelación y solicitan que revoquemos la *Segunda Sentencia Enmendada* del Tribunal de Primera Instancia, Sala Superior de Bayamón, emitida el 4 de junio de 2024. En dicho dictamen, se declaró ha lugar una reclamación por despido injustificado contra las apelantes y se impuso, entre otros, el pago del veinticinco (25%) por ciento de la mesada por concepto de honorarios de abogado. Por los fundamentos que expondremos, confirmamos la *Segunda Sentencia Enmendada*.

Número Identificador

SEN2024 _____

En síntesis, el caso de epígrafe trata de una demanda por despido injustificado ocurrido en el 2015. Según el expediente, el señor Omar Gamero Álvarez (señor Gamero Álvarez) fue empleado de Longo de Puerto Rico, LLC (Longo de Puerto Rico), Longo Caribbean, Inc. (Longo Caribbean) y Longo-En Tech Puerto Rico, LLC (Longo-En Tech). Comenzó su empleo con Longo Puerto Rico, Inc.—que posteriormente se convertiría en Longo de Puerto Rico, LLC—en el año 1991 como capitán de barco. Posterior a este empleo inicial, en el 2005, Longo de Puerto Rico cambió la clasificación del señor Gamero Álvarez a *Safety Manager*, un puesto que también aparecía bajo su nombre en una lista oficial de empleados despedidos de Longo Caribbean.

Además, del expediente se desprende que (1) Longo-En Tech se incorporó en el 2013; (2) todas las compañías apelantes comparten la misma dirección postal; (3) para el 2014, el señor Gamero Álvarez recibía comprobantes de retención de cada compañía y aparecía como empleado de Longo Caribbean y Longo-En Tech; (4) el señor Gamero Álvarez aparecía como "gerente de seguridad" en los certificados de elegibilidad de Longo Caribbean y Longo En-Tech; (5) igualmente el señor Gamero Álvarez aparecía como representante de Longo de Puerto Rico y Longo-En Tech en procedimientos de subasta; y (6) este mismo tenía un plan de pensiones con Longo En-Tech.

Conociendo lo anterior, una carta del 29 de enero de 2019 de Longo-En Tech dirigida al Ingeniero Juan C. Rodríguez identifica al señor Gamero Álvarez y al señor Santiago como *Safety Officers* competentes y cualificados para el proyecto de Ponce STS Rehabilitation de la Autoridad de Acueductos y Alcantarillados (AAA).

Igualmente, el señor Gamero Álvarez testificó que Longo-En Tech le daba instrucciones para cumplir con las normas de salud y seguridad ocupacional de OSHA y, por AAA comunicar que no se podía tener un solo *Safety Officer* en múltiples proyectos, se añadió al señor Santiago Fontánez para cumplir con la encomienda.

Según el testimonio del señor Santiago, un *Safety Officer* es aquella persona que (1) ha hecho treinta (30) horas de entrenamiento en construcción con la Occupational Safety and Health Administration (OSHA); (2) tiene la experiencia requerida sobre los estándares de seguridad en la construcción; (3) es competente en tal función; (4) vela por la seguridad del ambiente de trabajo de construcción; y (5) busca los materiales de seguridad necesarios para el trabajo asignado, cuyas ordenes de compras lo mandaba y firmaba, si provenían de la oficina, el señor Gamero Álvarez. Según el mismo testimonio, el señor Gamero Álvarez y el señor Santiago Fontánez se turnaban las labores de seguridad—cuales incluían trabajar en espacios confinados y velar por el cumplimiento de los estándares de seguridad de la OSHA—y coincidían diariamente en el campo de trabajo, en el cual el señor Gamera Álvarez también ejercía una función de mentor o supervisor del señor Santiago Fontánez de manera no oficial. Más aun, dicha declaración clarifica que el señor Santiago Fontánez comenzó a ejercer ciertas funciones que tenía el señor Gamero Álvarez antes de ser despedido, tal como firmar la minuta de las reuniones semanales y las listas de asistencia y representar a Longo-En Tech en procesos de pre-subasta.

Ahora bien, el foro apelado menciona que el señor José Saavedra Calo, *controller* de las apelantes, confirmó mediante declaración que,

en cuanto a sus funciones, el señor Gamero Álvarez ejercía distintas funciones más allá de *Safety Manager*, más que el señor Robert Longo Jr. testificó que el señor Gamero Álvarez era *Safety Officer* de Longo-En Tech. Este último también indicó que su socio, el señor Eugene Camali, no le caía bien el señor Gamero Álvarez y no le gustaba su trabajo, por lo cual no lo quería en Longo-En Tech, esto a pesar de que al señor Gamero Álvarez nunca se le hizo un señalamiento en el trabajo. Igualmente, dicho foro menciona que no se evidenció que un pago que le hizo Longo-En Tech al señor Gamero Álvarez de tres mil ($3,000.00) dólares fuera por bono de Navidad o regalía.

No obstante, luego de la AAA dar por cumplido dos proyectos y cancelado uno que tenía con Longo de Puerto Rico, el 13 de julio de 2015, Longo Caribbean le notificó al señor Gamero Álvarez que, debido a escasez de trabajo, estaban obligados a prescindir de sus servicios efectivamente; esto a pesar de que las apelantes mantenían un contrato sobre el proyecto de Ponce STS Rehabilitation. Asimismo, el señor Santiago Fontánez continuó en su puesto de *Safety Officer*, según este declaró en corte.

Por todo lo anterior, el señor Gamero Álvarez, la señora María Luisa Álvarez Morell (señora Álvarez Morell) y la Sociedad Legal de Gananciales compuesta por ambos (conjuntamente "apelados") presentaron una querella contra los apelantes al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185a *et seq.*) y solicitó que se ordenara a los apelantes el pago de la mesada, el salario dejado de devengar y los honorarios de abogado y la reinstalación del señor Gamero Álvarez en el empleo. Luego de los apelantes responder y solicitar que se dictara sentencia sumaria—además de varias replicas y

dúplicas—el Tribunal de Primera Instancia desestimó la causa de acción sobre salarios dejados de devengar y reposición en el empleo, pero mantuvo activo la reclamación por despido injustificado.

Posterior a otros trámites procesales—que incluyeron las declaraciones de los antes referidos testigos—el foro de 1ra instancia determinó que las tres compañías no eran entidades separadas. Además, describió cómo los apelantes fallaron en probar que tenían un plan de reorganización o reducción de personal *bona fide*, particularmente por la prueba y los testimonios desfilados demostrar que el puesto de *Safety Officer* se mantuvo en las mismas funciones que aquellas que existían antes del despido del señor Gamero Álvarez. Es decir, la evaluación e interpretación del Tribunal de Primera Instancia acerca de la prueba y testimonios presentados le llevó a concluir que los apelantes despidieron al señor Gamero Álvarez por un mero disgusto de su persona, en lugar de por una escasez de trabajos o proyectos. Por último, dicho Tribunal concluyó que, al mantener el puesto de *Safety Officer* dentro de las empresas, el señor Gamero Álvarez tenía más derecho a dicho puesto por tener mayor antigüedad. La referida *Sentencia* fue eventualmente enmendada para ordenar a los apelantes el pago del veinticinco (25%) por ciento de la mesada del señor Gamero Álvarez por concepto de honorarios de abogado, conforme a la Sección 15 de la Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA sec. 3132).

Insatisfechos, los apelantes recurren ante este Tribunal y alegan que el foro primario erró (1) en la apreciación de la prueba documental y testifical al determinar que el señor Gamero era *Safety Officer* en vez de *Safety Manager*; (2) al determinar que el despido del señor Gamero fue injustificado; (3) al determinar que la evidencia presentada por las

apelantes fue insuficiente para demostrar un plan de reorganización o reducción *bona fide* cuando nuestro ordenamiento jurídico solamente requiere una decisión gerencial válida; (4) al determinar que las querelladas tenían que hacer un análisis de antigüedad cuando la posición de *Safety Manager* y *Safety Officer* son clasificaciones ocupacionales distintas; y (5) al fijar en un veinticinco (25%) por ciento los honorarios de abogado cuando nuestro ordenamiento jurídico establece que en casos de despido injustificado los honorarios son a razón del quince (15%) por ciento de la mesada.

Luego de varios trámites procesales—que incluyeron la autorización de presentar la transcripción de los testimonios de solo dos testigos—los apelados responden en oposición y argumentan que (1) este Tribunal carece de todos los elementos esenciales para descartar la apreciación de la prueba del foro primario, y por tanto debemos diferirnos a la determinación de dicho foro; (2) que la Ley Núm. 80 y su jurisprudencia interpretativa requiere la acreditación de una razón válida por reorganizar su compañía, de manera que demuestra su utilidad, y por tanto justifique el despido de un empleado; y (3) que la Ley Núm. 2 y la Ley Núm. 80, entre otros estatutos y dictámenes judiciales, disponen que la imposición de un veinticinco (25%) por ciento de honorarios de abogado contra el patrono es razonable y legal.

Vale recordar que en nuestro ordenamiento jurídico se presume que los tribunales actúan con corrección, por lo que compete a la parte apelante la obligación de demostrar lo contrario. *Morán v. Martí*, 165 DPR 356 (2005) (*Per Curiam*). Dicho de otro modo, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de

credibilidad que hacen los foros primarios. *Fernández Martínez v. RAD-MAN San Juan III-D*, 208 DPR 310 (2021). Ello responde a que es el foro primario quien ve, escucha y aprecia la conducta de los testigos y, por tanto, está en mejor posición para evaluar y aquilatar la prueba presentada en el juicio. *Pena Rivera v. Pacheco Caraballo*, 2024 TSPR 48 (citando a *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194 (2021)). Como consecuencia, los foros revisores no deben intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad. Íd. (citando a *Ortiz Ortiz v. Medtronic*, *supra*; *Santiago Ortiz v. Real Legacy et al.*, *supra*).

Por otro lado, cabe destacar que toda reclamación laboral contra un patrono se tramitará mediante el procedimiento sumario de la Ley Núm. 2, siempre y cuando se inste una querella por cualquier derecho, beneficio o suma por concepto de compensación por trabajo o labor realizados o cuando se haya despedido al obrero sin justa causa. Sec. 1 de la Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA sec. 3125). Dicha ley dispone que el procedimiento sumario al amparo de esta concederá a las partes la mayor amplitud que sea posible. Íd., sec. 3125. Particularmente, la parte querellada no podrá usar los medios de descubrimiento de prueba autorizados por las *Reglas de Procedimiento Civil* para obtener información que debe figurar en las constancias, nóminas, listas de jornales y demás récords que los patronos vienen obligados a conservar. Íd., sec. 3120. Véase, también, Ley Núm. 47-2021 (29 LPRA sec. 261 *et seq.*). A manera de excepción, la parte querellada podrá obtener información de cualquier declaración prestada o documento sometido por la parte querellante en cualquier acción

judicial. Sec. 3 de la Ley Núm. 2, *supra*. Sin embargo, ninguna de las partes podrá someter más de un interrogatorio o deposición, ni podrá tomar deposición a la otra parte después que le haya sometido un interrogatorio o viceversa, excepto cuando medien circunstancias excepcionales que a juicio del tribunal justifiquen la concesión de otro interrogatorio u otra deposición. Íd.

Ahora bien, la Ley Núm. 80 protege el derecho de los trabajadores ante acciones arbitrarias y caprichosas de los patronos. *Segarra Rivera v. Int'l Shipping Agency et al.*, 208 DPR 964 (2022). Dicha ley impone el pago de una indemnización—la conocida mesada—al patrono que sin justa causa despida a un empleado que es contratado por un periodo de tiempo indeterminado. Íd. (citando al Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185a)). Ante una acción por despido injustificado, surge una presunción de discrimen contra el patrono, quien tendrá el peso de la prueba para establecer que el despido estuvo justificado. *González Méndez v. Acción Social*, 196 DPR 213 (2016) (citando a *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364 (2001); *SLG Hernández-Beltrán v. TOLIC*, 151 DPR 754 (2000)).

Aunque la Ley Núm. 80 no establece específicamente qué constituye un despido injustificado, sí menciona varias circunstancias que liberan el patrono de responsabilidad, tales como cuando (1) el empleado incurra en un patrón de conducta impropia o desordenada; (2) el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente; (3) la violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento; (4) el cierre

total, temporero o parcial de las operaciones del establecimiento; (5) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público; (6) las reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. Art. 2 de la Ley Núm. 80, *supra*. De alegarse que hubo una reorganización corporativa, el patrono tendrá que acreditar que el despido respondió a una decisión gerencial válida, pero no estará obligado a presentar evidencia de la existencia de un proceso o un plan de reestructuración de una forma específica. *Segarra Rivera v. Int'l Shipping Agency et al.*, *supra*.

Asimismo, dicha ley dispone que de un empleado ser despedido por las últimas tres razones mencionadas, el patrono deberá retener con preferencia en el empleo a los empleados de más antigüedad, siempre y cuando subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos. Art. 3 de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185c). De esta manera, se evita el desplazamiento de empleados entre diferentes clasificaciones ocupacionales. *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586 (2013).

De conformidad con lo anterior, la Ley Núm. 80 dispone que en todo pleito fundado bajo dicha ley—y luego de terminarse la conferencia con anterioridad al juicio—el patrono depositará en la Secretaría del foro primario una cantidad para honorarios de abogado

que nunca será menor del quince (15%) por ciento del total de la compensación o cien ($100) dólares, la que fuere mayor. Art. 11 de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185k). Véase, también, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011) (citando a *Román v. Superintendente de la Policía*, 93 DPR 685 (1966)). Dicha cantidad le serán devueltas al patrono si se dictare sentencia final y firme en su favor. Íd. Asimismo, la Ley Núm. 2 explica que de dictarse sentencia en favor del querellante—si este compareciere representado por abogado—se condenará al patrono al pago de honorarios de abogado. Sec. 15 de la Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA sec. 3132).

En el presente caso, no advertimos que el Tribunal de Primera Instancia haya abusado de su discreción o haya actuado de manera parcial, perjudicial o errada. Del expediente se desprende el carácter esencialmente fáctico de la controversia y el peso que con respecto a los hechos conserva el foro primario. El expediente ya nos deja saber que el señor Gamero Álvarez, al trabajar para las tres compañías apelantes, era el empleado con más antigüedad, con más experiencia en el campo de seguridad y ejercía el puesto de *Safety Officer*, a la vez que el señor Santiago Fontánez continuó ejerciendo las mismas facultades que tenía el señor Gamero Álvarez antes de este ser despedido, mientras Longo-En Tech todavía mantenía un proyecto vigente al momento del controversial despido. Sin embargo, más relevante aún, el Tribunal de Primera Instancia tuvo la oportunidad de evaluar la conducta de todos los testigos, de la evidencia presentada, e interpretar los hechos en función de ello y en el ejercicio de su discreción. A esos efectos, el expediente no manifiesta una apreciación de la prueba crasamente

errónea, por lo cual corresponde que nos remitamos a la apreciación de la prueba y determinación del Tribunal de Primera Instancia. Asimismo, mantenemos la imposición del pago del veinticinco (25%) por ciento de la mesada por concepto de honorarios de abogado, ya que la Ley Núm. 80 dispone claramente que un quince (15%) por ciento de la mesada es meramente el mínimo que un tribunal puede ordenar.

Por los fundamentos expresados, confirmamos la *Segunda Sentencia Enmendada* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones